[Civ. No. 4032.    First Appellate District, Division Two.—December 1, 1921.]

## MILES BALCOM, Appellant, v. GROWERS WARE-HOUSE CO. et al., Respondents.

[1] CONVERSION—STORED BEANS—EVIDENCE — DELIVERY — WEIGHT RE-CEIPT TICKETS—PROPER CROSS-EXAMINATION.—Where in an action against a warehouse company for the alleged conversion of stored beans the plaintiff called an officer of the defendant as a witness, and, after having had him identify certain receipts, questioned him concerning the delivery of the beans, it was proper on cross-examination to show that all the beans were delivered to plaintiff's selling agent and that some of the weight tickets were not originals.

[2] ID. — ATTORNEY AS WITNESS — CONTRACT FOR CONTINGENT FEE — OMISSION TO LIMIT INTRODUCTION—ABSENCE OF PREJUDICIAL ERROR.—Where plaintiff's attorney testified as a witness, and his contract of employment calling for a contingent fee was introduced in evidence on his cross-examination, it was not prejudicial error to omit to limit the introduction to a showing of interest in so far as it might affect his testimony, where there was nothing in the contract pertinent for or against either of the parties litigant.

[3] EVIDENCE—OVERRULING OF OBJECTION—REPETITION AND ANSWERING OF QUESTION—RENEWAL OF OBJECTION UNNECESSARY.—Where an objection to a question has been overruled, it is not necessary for the objecting party to renew his objection when the question is repeated and answered by the witness.    (Opinion of supreme court on denial of hearing.)

[4] ID.—APPEAL — REVIEW OF RULING — MOTION TO STRIKE UNNECES-SARY.—Where an objection is made and overruled and the question is then answered by the witness, it is not necessary to a review on appeal that a motion be made to strike out the answer.    (Opinion of supreme court on denial of hearing.)

[5] ID. — RE-EXAMINATION OF WITNESS ON OBJECTED MATTERS — AB-SENCE OF WAIVER.—Re-examination of a witness on subjects upon which he was questioned on cross-examination over the objection of the adverse party is not a waiver of all objections made to the relevancy of the cross-examination.    (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of Ventura County.    Merle J. Rogers, Judge.    Affirmed.

The facts are stated in the opinion of the court.

Earl E. Moss for Appellant.

Chas. F. Blackstock for Respondents.

STURTEVANT, J.—The plaintiff brought an action against the defendants which sounds in conversion. The case was tried before the trial court sitting with a jury.

The jury returned a verdict in favor of the defendants and from the judgment entered thereon the plaintiff has appealed under section 953a of the Code of Civil Procedure. As we have stated, the plaintiff's complaint is in the ordinary form of an action for conversion. It charges the defendants with having converted 61,395 pounds of beans and 1,445 pounds of split beans. The defendants answered denying all of the material allegations of the complaint. It may be stated at this point for the purpose of greatly clarifying the record, that the plaintiff claimed the full weights stated in all of the warehouse receipts issued to him, whereas the defendants claimed that during the delivery season the plaintiff was not satisfied with the weight tags, requested the defendants to weigh the plaintiff's beans on two different scales, that the beans were so weighed, and that warehouse receipts in some instances were issued at one set of scales for a certain lot of beans, and when the same beans were weighed at the other set of scales another warehouse receipt was issued for the very same lot, and in this way six warehouse receipts thereafter known as "Weights for comparison," were issued by the warehouse, notwithstanding that the warehouse did not receive the goods.

When the plaintiff commenced to introduce his case, he called F. A. Shipley, an officer of each of the defendant corporations. After the witness had been examined he was cross-examined. The appellant in his brief states, "His direct examination having been confined solely to an identification of receipts and documents, and the signatures thereon, the witness was then permitted to enter into a long explanation of his side of the case, which was made up of hearsay testimony from many sources"; in making the above statement the appellant is in error in the statement of the facts. Taking up these two matters in the order stated, we will address ourselves first to the charge that the cross-examination was not confined within proper bounds. Be-

fore we can determine the proper bounds of the cross-examination, it becomes necessary to ascertain what had been the direct examination. We will not attempt to state the whole of the direct examination, but it is sufficient to say that during the direct examination the witness Shipley was by the attorney for the appellant caused to testify that the appellant's beans "were delivered to what is known as the Growers Warehouse, and a portion was put in what is known as the Citrus Warehouse, a warehouse which I had leased to take care of the beans for which I did not have room in the Growers Warehouse. These warehouses are operated by the Shipley Company. As those beans came into the warehouse, a scale ticket showing the weights, amount of beans received from Mr. Balcom, was issued by the warehouse. The paper, Plaintiff's Exhibit 1, which you show me, I know what it is. It is a scale ticket representing the weights of beans. It was issued by Mr. Sheppard. He is foreman of my warehouse, that is, the warehouse of the F. A. Shipley Company, which was operated by the company in the year 1918. That is one of the tickets issued from the warehouse by Mr. Sheppard and he, as foreman of the warehouse, was authorized to issue those tickets and authorized to receive the beans and put them in the warehouse. . . . This paper you show me, Plaintiff's Exhibit 6, is a weight ticket of the Growers Warehouse Company issued by that company and represents the receipt of a load of beans. . . . The word 'gross' on Plaintiff's Exhibit 29, would indicate on the weight ticket the weight of the entire load, consisting of the beans and the wagon; the word 'tare' indicates the weight of the wagon after the beans have been unloaded; and the word 'net' indicates the weight of the beans themselves." In connection with the foregoing testimony, the witness was caused to identify the writing on and the authenticity of thirty-five warehouse receipts which were given numbers as Plaintiff's Exhibits 1 to 35, inclusive. On further direct examination the witness was caused to testify as follows: "The beans of the 1918 crop of beans that were placed in these warehouses in October and November, 1918, were not to my knowledge returned to Mr. Balcom; none of them were to my knowledge delivered to anyone except upon the order of the Lima Bean Association as the selling agent of Mr. Balcom. The beans mentioned

in the several reports that I have identified as having been made to the Lima Bean Growers Association, were delivered on the order of that association; they were delivered to them or to their order." After 'those proceedings were had, the cross-examination commenced:

"Mr. Blackstock: Did you deliver to Mr. Balcom or to the Lima Bean Growers Association on his behalf, all of the beans that Mr. Balcom stored with you in 1918?

"Mr. Selby: Object to that question on the ground that it calls for the conclusion of the witness.

"The Court: The objection will be overruled. A. We delivered them all to the Lima Bean Growers Association."

[1] There was no error in the ruling. The appellant had immediately before the direct examination asked the witness to whom the beans were delivered. As the cross-examination proceeded the witness testified: "All of these tickets here are not original weight tickets. Six of them are not. I can identify those that are not originals. I have picked them out. I can identify them by their exhibit number. The exhibit numbers are 12, 13, 6, 7, 14, and 11.

"Mr. Blackstock: Now, will you explain how these six tickets happened to be issued at all?

"Mr. Moss: If the court please, it is not proper cross-examination, and we object to it as incompetent, irrelevant, and immaterial; it is a part of their defense.

"The Court: The objection is overruled."

There was no answer to the question, and immediately thereafter Mr. Blackstock propounded the same question and there was no objection made and the witness proceeded in part as follows: "They were issued due to the fact that Mr. Balcom telephoned in a request that we have the beans, some of his beans, weighed—," and that answer was never completed. Immediately following the above proceedings the following occurred:

"Mr. Blackstock: You say these tickets are not originals?

"A. They are not.

"Mr. Moss: Now, if the court please, we desire to object to that question and the testimony as given, and move to strike out all the testimony of this witness heretofore given tending to contradict these receipts, upon the ground that his testimony is incompetent, irrelevant, and immaterial, and upon the further ground that under the law this wit-

ness is not permitted, nor is the defendant permitted to contradict the receipt.

"The Court: The motion to strike is denied, and the objection is overruled.

"Mr. Moss: I suppose for the sake of the record it may be stipulated that we object to all testimony offered by the defense tending to contradict the receipts.

"The Court: Very well, it will be so understood."

(At this time it may be well to interpose that although the appellant made the last objection in the trial court, that on argument in this court Mr. Moss frankly stated that he did not make the same contention at this time.)

"The Court: If there is any further point or any other objection as to competency, or relevancy, or materiality, you may raise it, but so far as this particular point is concerned, you may present it."

Now, as to the bounds of cross-examination being transcended, we think it is clear that, (1) the subject matter of the cross-examination was the same as the subject of the direct examination; (2) that if appellant would raise such a question in this court he must have interposed in the lower court his objection to the very question that was answered, and ask for a ruling thereon, and in the instant case that was not done; (3) after an answer was made to which an objection had been made and the objection overruled, appellant's attorney should have moved to strike the answer out, which he did not do in the instant case; and (4) after the cross-examination was closed and on redirect examination the attorney for the appellant proceeded to examine the witness exhaustively on the very subjects to which theretofore he had strenuously objected.

We will turn now to the subject of hearsay, and examine the record as to how the record stands in that behalf:

"Mr. Blackstock: Now, will you explain how these six tickets happened to be issued at all?

"Mr. Moss: We make the further objection, if the Court please, we state it is well known to Mr. Blackstock, as to ourselves, that this witness has no personal knowledge of those facts.

"The Court: The court does not know; the objection will be overruled.

"Mr. Blackstock: Go ahead and explain the exhibit; read the question, Mr. Reporter.

"(Question read by reporter.)

"Mr. Moss: If the court please, for the purpose of laying the foundation, may I ask the question— [Discussion.]

"The Court: The objection will be overruled. The ruling may stand, answer the question, if you know."

At this point it will be noted that the discussion by counsel, or some other cause, had apparently taken from the trial court's mind the nature of the request which counsel was attempting to make, and counsel observing the fact, or not observing the fact, did not call to the court's mind the fact that he was making a request to ask a question of the witness, and that he was not making an objection until he had laid the foundation. Immediately thereafter the record continued as follows:

"The Witness: What is the question?

"Mr. Blackstock: Explain how these tickets happened to be issued at all.

"A. They were issued due to the fact that Mr. Balcom telephoned in and requested that we have the beans, some of his beans, weighed—

"Mr. Moss: The question of you, Mr. Shipley—

"Mr. Blackstock: Let him answer the question.

"The Court: He can testify to what he knows as a matter of fact.

"Mr. Blackstock: I withdraw the question."

Thus it appears that after all of the discussion and wrangling, etc., the question was not answered at all. Closely following, however, and it may be conceded as part of the proceeding, the reporter read the question:

"Just explain, Mr. Shipley, how you know those tickets are not originals.

"A. Mr. Balcom telephoned into our office at the time he stored, or I will say shortly thereafter, and stated—

"Mr. Moss: Is that over our objection, if the court please, as to the knowledge of the witness?

"The Court: Well, I cautioned the witness to testify to what he had personal knowledge of, Mr. Moss; if this telephone message was received by you or in your presence, you can testify to it.

"A. It was not, your Honor."

Thus again the record shows much ado about nothing.

"Mr. Blackstock: Regardless of that telephone conversation, you say these tickets are duplicates; state how you know they are duplicates.

"The Witness: (Here delineates methods of bookkeeping, weighing, etc., as practiced in his warehouses, and then proceeded.) I was told by Miss House (and I have tickets and can identify them), that Mr. Balcom had telephoned in and requested that we have the beans, some of his beans, weighed on both scales, both on the large scales and the small scales, as comparison weights.

"Mr. Moss: We object to that hearsay testimony, as incompetent, irrelevant, and immaterial.

"The Court: I take it what someone told Mr. Shipley would be simply hearsay. Just refrain from telling what you do not know yourself, Mr. Shipley."

The ruling was correct and as exact as the occasion permitted. Furthermore, when the cross-examination was ended and the redirect examination was commenced, the third question propounded was:

"Mr. Selby: You have stated that you know the tickets marked Plaintiff's Exhibits 6, 7, 11, 12, 13, and 14, are tickets that were issued for loads that had been previously weighed, and other tickets issued for the same loads?

"A. Yes, sir.

"Q. Did you know that at the time it happened?

"A. I did not."

And in reply to the appellant's questions the witness gave the following hearsay testimony: "I learned the fact along in the summer of 1919, seven or eight months after the delivery of the beans. I got the information by calling my employees together, and Miss House telling me. What I am testifying to is from what Miss House told me and the evidence that was shown me. . . . Ticket 5 was posted, was brought over from the Citrus Warehouse, having been weighed by Mr. Sheppard, and given to Miss House, and that ticket was posted and the duplicate representing that load were not posted on the same day. Miss House absolutely knew they were duplicates. She knew it because these beans came into the Growers Warehouse and were weighed on the large scales and the tractor or teams hauling around and went to the Citrus Warehouse. I absolutely know she

knew this and she knew those tickets were all the same load. I know it because it is as plain as can be. All I have to go by is that Miss House and Mr. House told me these were duplicates. . . . On the 29th of October there was an entry of 217 sacks weighing 20,730 pounds. They were not weighed twice, they appear to be the same beans as are covered by Plaintiff's Exhibits 24 and 25. . . . I did not make the entries upon the warehouse ledger. I was not present when any of the entries were made other than being in the same office." After eliciting these facts the appellant made no motion to strike. Before leaving the subject of hearsay, which, as above shown, came from Miss House and Mr. House, it is proper to state that both of those individuals appeared in court and were examined and cross-examined *in extenso* and that any of the testimony that crept into the record as hearsay, without regard to whether it was objected to or was not objected to, was given anew by the witness who was altogether competent to testify on the subject.

[2] The plaintiff had employed Mr. Moss under a written contract to present the plaintiff's case. That contract provided that Mr. Moss would be compensated by a contingent fee. During the trial Mr. Moss took the stand as a witness. To show his interest in the case the respondent asked him questions concerning that contract; the contract was produced and was offered in evidence.

"Mr. Moss: We object to the introduction for any purpose other than to show my interest in the case as it might affect my testimony as a witness."

The court did not then limit the testimony and did not thereafter limit the testimony. It might well have done so. However, we cannot appreciate that the omission was prejudicial error. There was not one word in the instrument that was possibly pertinent for or against either of the parties litigant, except as showing a weakness in the testimony of Mr. Moss, one of the witnesses produced by the appellant.

We have read the record from cover to cover, and it is patent that the case was fully and fairly tried, and determined on its merits. The respondents produced substantial testimony to the effect that the said tickets known as "Weights for comparison" were such and nothing more.

If the jury believed that testimony, and its verdict indicates that it did, then the judgment should stand.

The judgment is affirmed.

Nourse, J., and Langdon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 30, 1922, and the following opinion then rendered thereon:

THE COURT.—The petition for a hearing of this cause in the supreme court is denied.

[3] In the course of the opinion it is said that where the appellant objects to a question on the ground that it was not cross-examination and his objection was overruled and the question thereupon repeated and answered, the appellant must again object to the question as repeated, and that if he does not repeat his objection he cannot have the ruling reviewed on appeal. We think this is erroneous. When an objection has been overruled it is not necessary for the party objecting to renew his objection when the question is repeated and answered by the witness.

[4] It is also said that where an objection was made and overruled and the question is then answered by the witness the ruling cannot be reviewed on appeal unless a motion was also made and overruled to strike out the answer. We do not think this is the law.

[5] Nor do we understand that if the appellant's attorney re-examines the witness on subjects upon which he was questioned on the cross-examination by the respondent over the objection of the appellant, he thereby waives all objections made by him on the relevancy of the cross-examination. These statements in the opinion we think were erroneous, but they were not necessary to the decision.

Shaw, C. J., Shurtleff, J., Waste, J., Wilbur, J., Lawlor, J., and Sloane, J., concurred.