[Civ. No. 20174.   Second Dist., Div. One.   Nov. 8, 1954.]

RALPH BUCHANAN et al., Appellants, v. ENID NYE et al., Respondents.

[Civ. No. 20175.   Second Dist., Div. One.   Nov. 8, 1954.]

THOMAS MIDDLETON, Appellant, v. ENID NYE et al., Respondents.

[Civ. No. 20176.   Second Dist., Div. One.   Nov. 8, 1954.]

ROBERT BUCHANAN, a Minor, etc., Appellant, v. ENID NYE et al., Respondents.

Hirson & Horn, Parker, Stanbury, Reese & McGee and Raymond G. Stanbury for Appellants.

Joseph W. Jarrett for Respondents.

MOSK, J. pro tem.[*]—Pursuant to stipulation of the parties and order of this court, these three cases arising out of the same automobile accident were consolidated for the purposes of appeal. In all three the defendant prevailed, and the respective plaintiffs have become appellants.

The actions arose as a result of a serious collision between two motor vehicles on Vermont Avenue, near 182nd Street, in Los Angeles County at about 4 o'clock on the afternoon of May 2, 1952. Appellant Mrs. Jean Buchanan was driving a 1934 Ford panel pickup truck in a southerly direction on Vermont, accompanied by her 5-year-old son, appellant Robert Buchanan, and her elderly stepfather-in-law, appellant Thomas Middleton. Respondent Mrs. Enid Nye, owner of a 1948 Buick sedan, was in her car, which was being driven northerly by one Everett Murray Todd, who was killed in the accident. Appellants charged permissive use and negligent entrustment based upon Todd's purportedly intoxicated condition.

Mrs. Buchanan testified she was proceeding on her right

[*]Assigned by Chairman of Judicial Council.

side of Vermont, when respondent's vehicle, approaching from the opposite direction, cut out from behind another car over the center line and directly into her path. Mrs. Nye testified she had no memory concerning the accident, being unable to remember events subsequent to several errands in Long Beach with Todd earlier in the day. Appellant Middleton saw nothing before the accident, the youngster Robert Buchanan was not called to the stand, and no other eyewitnesses to the accident itself were produced.

Robert P. Ballou, a police officer who investigated the accident, testified that he arrived at the scene at 4:40 p. m., that he found the Buchanan vehicle turned over in the western portion of the roadway and surrounded by debris, the Nye car was 115 feet north of the debris and facing in a southeasterly direction straddling the pavement. The officer testified that the debris was not particularly helpful to him in attempting to fix the point of impact. He gave his opinion that the point of impact was 2 feet east of the center line, this point being on the wrong side of the highway for appellants' southbound car. He based this opinion on the physical factor of 30 feet of brushmarks left by the northbound vehicle from this point, and "from the statement of the witness—Mr. Sosic . . ." Upon further cross-examination by respondent's counsel, the officer was reminded of other physical factors which were also considered. Later the trial judge, on his own motion, struck reference to information obtained from the witness. Since in its instructions, the court cautioned the jury to disregard all stricken evidence, whatever error resulted from admission of the officer's testimony was corrected.

From this rather casual mention of the name of Sosic, however, a virtual Pandora's box of courtroom intrigue was opened. Before the case closed, considerable hearsay evidence was presented to the jury, appellants contend erroneously and prejudicially so.

The witness Sosic did not appear, and respondent, who desired his testimony, produced evidence tending to show he was evading service of process. This was entirely proper to dispel whatever inferences might arise from failing to produce a witness believed to be favorable. (*Huddy* v. *Chronicle Publishing Co.*, 15 Cal.2d 554, 569 [103 P.2d 421].) At one point during this part of the proceeding, one of appellant's counsel, Mr. Stanbury, went behind the rail of the court to talk to Mr. Horn, another of appellant's counsel. Horn was asked by Stanbury whether he had been in contact

with Sosic. Horn's answer, according to some witnesses, was in the affirmative, but according to Horn and Stanbury, it was "no." There was also some conflict as to whether in his question Stanbury had included the word "yesterday." On direct examination, Horn was asked by his cocounsel whether they ever wanted Sosic as their witness, to which he replied negatively. On cross-examination, he stated, over objection to the question, that his principal reason was "we just didn't feel that we could vouch for him as a witness." Respondent's counsel pursued this subject further, drawing from Horn over objection the concession that this opinion of the missing witness' reliability was based partly on the statement appearing in the police report, and partly on Sosic's testimony at the coroner's inquest into Todd's death.

Thereupon respondent's counsel proceeded to read, in the form of a question to the attorney and over objection, the entire statement of Sosic as contained in the police report of the accident. The objection should have been sustained, for the question placed before the jury the clearly hearsay testimony of a witness unavailable for cross-examination.

Stripped of the semantic differences employed by the respective contestants in stating the problem involved herein, the fundamental question is whether, under the guise of cross-examination of an opposing attorney on the latter's reason for not calling a witness deemed unreliable, counsel may read into evidence a written hearsay statement of the absent witness. To merely state the query is to answer it in the negative.

The essence of the hearsay rule is a requirement that testimonial assertions shall be subjected to the test of cross-examination. (Wigmore on Evidence 3d ed., vol. V, p. 7.) The basic theory is that the many possible deficiencies, suppressions, sources of error and untrustworthiness, which lie underneath the bare untested assertion of a witness, may be best brought to light and exposed by the test of cross-examination. (Wigmore, *supra,* p. 3.)

There are, of course, a number of exceptions to the hearsay rule. (For example, see Code Civ. Proc., §§ 1870, 1920, 1920a, 1946.) In the instant situation, however, respondent has not indicated and we fail to perceive into what exceptional category falls the written statement of an absent witness unavailable for cross-examination, whose statement is contained in a police report which is itself inadmissible under the law (Veh. Code, § 488), and whose statement is not offered for the purpose of contradicting or impeaching the

person who made the statement to police officers or the testimony of the police officers who received the statement.

■ While wide latitude should be permitted in cross-examination, it must not be extended to permit injection of assumed facts or introduction of matter which is otherwise inadmissible. (*McDonald* v. *Price,* 80 Cal.App.2d 150 [181 P.2d 115].) ■ It is true, as respondent states, that evidence proper for one purpose may be admitted even if inadmissible for other reasons. (*Wagner* v. *Atchison etc. Ry. Co.,* 210 Cal. 526, 531 [292 P. 645]; *Inyo Chemical Co.* v. *City of Los Angeles,* 5 Cal.2d 525, 543 [55 P.2d 850].) But here there is no theory upon which the hearsay statement of Sosic could be admitted. To permit it to be read to the jury as part of a question to a witness is allowing counsel to achieve by indirection that which he is clearly forbidden to do directly. We feel this error was patently prejudicial to appellant.

■ The general rule which permits a witness to state the reasons upon which his opinion is premised may not be used as a vehicle to bring before the jury incompetent evidence. "To so open up the inquiry," said the court in *People* v. *La Macchia,* 41 Cal.2d 738, 739, 746 [264 P.2d 15] (a civil case), "would create a disastrous break in the dike which stands against a flood of interminable investigation."

But, argues respondent, the appellant's counsel a few moments later in the trial withdrew an objection to reading the testimony of Sosic given at the coroner's inquest, and that was comparable hearsay evidence. Following the interrogation of Horn about the police report statement of Sosic, respondent's counsel proceeded to question him about the coroner's inquest. At that point, Attorney Stanbury interrupted to announce: "Just a minute, your Honor, I have decided to withdraw my objection to that transcript and let it be read in its entirety." This act, maintains respondent, amounted to consent to the introduction of the hearsay testimony, and appellant may not now complain. This contention is sound, insofar as it applies to the inquest proceedings.

■ It is clear that hearsay must be objected to at the trial. (*Denke* v. *Bowes,* 77 Cal.App.2d 642, 644 [176 P.2d 81]; *Dorfer* v. *Delucchi,* 61 Cal.App.2d 63, 66 [141 P.2d 905]; *Powers* v. *Board of Public Works,* 216 Cal. 546, 552 [15 P.2d 156].) Having consented to the admission of the hearsay evidence at the trial, appellant may not object to it on appeal. (*Simonet* v. *Frank F. Pellissier & Sons,* 61 Cal.App.2d 41, 45 [141 P.2d 922]; *Newman* v. *Los Angeles Transit Lines,*

120 Cal.App.2d 685, 695 [262 P.2d 95].) Appellant contends, however, that his consent was induced by the desirability of graciously bowing to the inevitable, in view of the court's previous admission of Sosic's hearsay testimony, and by a hope of mitigating the damage to his cause already committed. Some parts of Sosic's testimony at the inquest, he states, were conflicting with statements in the police report and not altogether unfavorable.

We cannot be concerned with the mental processes employed by counsel in selecting his trial tactics. In this instance counsel could have preserved his record by objecting to the entire line of inquiry, but upon reflection chose not to do so. He may not now renege on his decison. It is a well known maxim of jurisdiction that acquiescence in error takes away the right of objecting to it. (Civ. Code, § 3516.)

Thus the problem here becomes whether the acquiescence in a second instance of hearsay estops the aggrieved party from complaining about the first erroneously admitted hearsay evidence. No authority has been cited holding that an estoppel or waiver arises under such circumstances and we have found none. The cases of *Balcom* v. *Growers Warehouse Co.*, 55 Cal.App. 474 [204 P. 39] (particularly the opinion of the Supreme Court, at p. 482, denying a hearing), *Wysock* v. *Borchers Bros.*, 104 Cal.App.2d 571, 586 [232 P.2d 531, 29 A.L.R.2d 948], and *Story* v. *Green,* 164 Cal. 768 [130 P. 870, Ann.Cas. 1914B 961], suggest the contrary.

The respondent urges, finally, that no prejudice was shown, and no miscarriage of justice resulted, even if the ruling on admissibility of the Sosic statement was erroneous. We believe the prejudicial nature of the evidence is clear. Respondent offered no direct testimony of any eyewitness to the accident, but nevertheless prevailed. While the physical factors to which the police officer testified deserved thoughtful consideration, it appears highly probable that the Sosic statement, having been obliquely presented to the jury, also was afforded significant weight.

The judgment is reversed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied November 29, 1954, and the petition of respondent (Enid Nye) for a hearing by the Supreme Court was denied January 3, 1955. Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.