[Civ. No. 8799.   Fourth Dist., Div. One.   July 16, 1968.]

DONALD ANDREW AUGUST, Plaintiff and Respondent, v. DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

54

Thomas C. Lynch, Attorney General, and Richard Tanzer, Deputy Attorney General, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

WHELAN, J.—Appellant Department of Motor Vehicles (DMV) appeals from a judgment ordering a peremptory writ of mandate to issue that DMV set aside its order suspending a driver's license.

On November 11, 1966, San Diego Police Officer Warren filed a sworn statement, an arrest report, and a supplemental arrest report with DMV pursuant to section 13353, Vehicle Code.[1] The statement alleged that the officer had probable

---

[1]Section 13353, Vehicle Code, provides in part as follows:
"(a) Any person who drives a motor vehicle upon a highway shall

cause to believe Donald Andrew August (licensee) had been driving a motor vehicle on a public highway while under the influence of intoxicating liquor; that licensee had been

be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months.

''The person arrested shall have the choice of whether the test shall be of his blood, breath or urine.

"Any person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn his consent and such tests may be administered whether or not such person is told that his failure to submit to the test will result in the suspension of his privilege to operate a motor vehicle.

" (b) If any such person refuses the officer's request to submit to a chemical test, the department, upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor and that the person had refused to submit to the test after being requested by the officer, shall suspend his privilege to operate a motor vehicle for a period of six months. No such suspension shall become effective until 10 days after the giving of written notice thereof, as provided for in subdivision (c).

" (c) The department shall immediately notify such person in writing of the action taken and upon his request in writing and within 15 days from the date of receipt of such request shall afford him an opportunity for a hearing in the same manner and under the same conditions as provided in Article 3 (commencing with Section 14100) of Chapter 3 of this division. For the purposes of this section the scope of the hearing shall cover the issues of whether the peace officer had reasonable cause to believe the person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor, whether the person was placed under arrest, whether he refused to submit to the test after being requested by a peace officer, and whether, except for the persons described in paragraph (a) above who are incapable of refusing, he had been told that his driving privilege would be suspended if he refused to submit to the test.

"An application for a hearing made by the affected person within 10 days of receiving notice of the department's action shall operate to stay the suspension by the department for a period of 15 days during which time the department must afford a hearing. If the department fails to afford a hearing within 15 days, the suspension shall not take place until such time as the person is granted a hearing and is notified of the department's action as hereinafter provided. However, if the affected person requests that the hearing be continued to a date beyond the 15-day period, the suspension shall become effective immediately upon receipt of the department's notice that said request for continuance has been granted.

"If the department determines upon a hearing of the matter to suspend the affected person's privilege to operate a motor vehicle, the suspension herein provided shall not become effective until five days after

informed he had to submit to a chemical test of his blood, breath or urine; and that a refusal to do so would result in a six-month suspension of his driving privilege; and that licensee refused to submit to such a test.

On November 28, 1966, DMV notified licensee that his license would be suspended for six months and that he was entitled to a hearing which would be ''informal'' unless he specifically requested a formal hearing. On December 11, 1966, licensee requested a hearing, without specifying that it be a formal one.

On January 18, 1967, an informal hearing was held at which licensee appeared without counsel and testified.

Licensee did not object to the hearing officer's use of the police officer's statement and arrest reports, and did not request an opportunity to cross-examine the arresting officer.

The hearing officer found that (1) licensee had been placed under arrest; (2) the arresting officer acted on reasonable cause; (3) licensee was advised of his driving privilege suspension if he refused to take a chemical test; and (4) licensee refused to submit to the test.

On February 10, 1967, DMV suspended licensee's license for six months. On February 17, 1967, licensee petitioned the superior court for an alternative writ of mandate and temporary restraining order. The petition alleged in part:

''III On or about November 14, 1966, petitioner was charged with the violation of California Vehicle Code 2310A [*sic*] to which he later plead [*sic*] guilty in San Diego Municipal Court and was sentenced. The court allowed him to retain his license for purposes of work. . . .

''  .  .  .  .  .  .  .  .  .  .  .  .  .

''V Respondent ordered a hearing for the purpose of obtaining evidence on which to determine whether said charge was true and whether petitioner's said license should be revoked or suspended. Said hearing was held in San Diego, California on January 16, 1967 at the Normal Street Office of the Department of Motor Vehicles before a duly appointed and acting Hearing Officer.

receipt by said person of the department's notification of such suspension.'' The first paragraph of the section embodies substantially the National Highway Safety Bureau Highway Safety Program Standard No. 4.4.8.

The underlying policy considerations that brought about the legislative mandate embodied in section 13353, Vehicle Code, are well stated in ·*Hough* v. *McCarthy*, 54 Cal.2d 273, 285 [5 Cal.Rptr. 668, 353 P.2d 276], a decision that preceded the enactment of that statute.

"VI At said hearing, petitioner introduced evidence that he was so intoxicated at the time of the DC 2103 A [*sic*] offense that he was in a condition rendering him incapable of refusing a chemical test. No other competent evidence was introduced by either party. Respondent may or may not have relied on hearsay reports of the arresting officer, but respondent did not produce the arresting officer and is refusing. to produce the arresting officer in such instances at a continued hearing without immediately suspending the license of the petitioner.

" . . . . . . . . . . . .

"VIII Respondent acted arbitrarily and without right by suspending petitioner's license and by reason of fact that the record is insufficient by right of law to support respondent's findings that said charges are true." The matter was heard on March 2, 1967. The court heard testimony from licensee and his passenger, received the arresting officer's statement and reports into evidence, and found that licensee was properly arrested and refused to take a chemical test, but concluded that DMV abused its discretion because the complainant officer was not present for cross-examination at the hearing, and issued a peremptory writ of mandate.

PURPORT OF THE TRIAL COURT'S DECISION

The decision of the trial court may be interpreted as holding that the procedures established by section 13353, Vehicle Code, and the existing provisions regarding informal hearings, are deficient as to a constitutional basis of due process unless there be read into them a requirement of confrontation of witnesses physically present, regardless of whether there is in truth a contested issue of fact to be determined at such hearing.

In our opinion, the case at bench is one in which there was not any disputed issue of fact; our observations as to what is required by due process must be viewed in the light of that opinion.

The following declaration, which appears in the opinion of *Endler* v. *Schutzbank*, 68 Cal.2d 162, 178 [65 Cal.Rptr. 297, 436 P.2d 297], illuminates the path of decision in the present case: "[W]henever governmental action based upon a stigmatizing judgment injures an individual by inducing others not to deal with him, he may challenge in court the government's refusal to accord him a full hearing on the

*disputed* facts which form the basis of its action.'' (Italics added.]

### Questions of Law Presented

The following questions present themselves:

*FIRST.* What Does Due Process Require in the Way of a Hearing for Suspension or Revocation of a Driver's License?

*SECOND.* What Character of Evidence Is Required at Such a Hearing?

*THIRD.* Do the Provisions of Section 13353, Vehicle Code, Permitting a Summary Suspension, if No Hearing Is Asked for, Meet the Requirements of Due Process?

*FOURTH.* In an Informal Hearing Under Section 13353, Where the Facts Giving Rise to Suspension Are Not Controverted, Is the Evidence Required for a Prima Facie Showing of a Lesser Character Than Where the Facts Are Controverted?

*FIFTH.* Was There an Issue of Fact?

### Incidental Questions

The circumstances that appear give rise to certain other questions:

*SIXTH.* Does Licensee's Claim of Lack of Recollection Whether He Was Warned of the Consequences of a Refusal to Take a Test and Whether He Did Refuse Create a Conflict in the Evidence?

*SEVENTH.* Does Licensee's Claim That He Was Too Much Intoxicated to Understand the Consequences of a Refusal to Take the Test Avert the Consequences of Such Refusal?

*EIGHTH.* How Does the Disposition of the Criminal Prosecution Affect the Action of DMV in Ordering the Suspension?

### Requirement of a Hearing

Under certain statutes a hearing has been held to be a necessary preliminary to any suspension or revocation, because of the wording of the statutes. Indeed, it may be said that a prior hearing is required unless the language of the statute makes clear that an order for suspension may be made in advance of a hearing although provision must be made for a subsequent hearing or review.

Thus in *People* v. *Noggle,* 7 Cal.App.2d 14, 18-19 [45 P.2d 430], a conviction of driving without a license after a permit

to operate a motor vehicle had been revoked was reversed because the revocation was made by DMV without a hearing and under a statute that was construed to require a prior hearing.

Similarly, in *Ratliff* v. *Lampton*, 32 Cal.2d 226, 227 [195 P.2d 792, 10 A.L.R.2d 826], a revocation without a prior hearing was ordered on the ground the licensee was unable to operate a motor vehicle safely upon the highways because of physical or mental disability or lack of skill, as shown by examination or other evidence. The Supreme Court, in *Ratliff* v. *Lampton, supra,* held that even though the statute did not expressly provide for a hearing, DMV could not summarily revoke a license on the ground that licensee could not safely operate a motor vehicle. The court left open the question whether a summary suspension could be justified on public safety grounds.

### THE HEARING MAY BE INFORMAL

In *Beamon* v. *Department of Motor Vehicles* (1960) 180 Cal.App.2d 200, 205 [4 Cal.Rptr. 396], the revocation of a driver's license was upheld following an informal hearing in which the records of DMV were received into evidence showing licensee's convictions of numerous violations of the Vehicle Code. It is stated in that opinion: ''We are not concerned with the provisions which made it mandatory on the department to suspend or revoke the privilege of any person to operate a motor vehicle upon the highway on receipt of a record showing he had been convicted of certain public offenses. (§§ 304, 305, 307.) In such cases the facts have already been determined in the criminal proceeding. Nor are we concerned with the question whether the department had the power to suspend or revoke the privilege in a case in which a court had acted on the question.''

*Hough* v. *McCarthy, supra,* 54 Cal.2d 273 [5 Cal.Rptr. 668, 353 P.2d 276], declared that the provisions of the Government Code dealing with administrative hearings (§§ 11500-11528) are not applicable to informal hearings under section 14104, Vehicle Code.

The Legislature in 1961 amended said section 14104, section 14107, Vehicle Code, governing formal hearings, and section 14112 of that code which makes the government Code sections applicable to formal hearings. It has also amended section 11501, Government Code. The Legislature has made all those amendments since the decision in *Hough* v. *McCarthy, supra,*

54 Cal.2d 273, and with knowledge of the holding in that case; however, no change was made as to any of those statutes in the matters that were the basis for the ruling in *Hough* v. *McCarthy*.

## CONSTITUTIONAL RIGHTS OF CONFRONTATION AND CROSS-EXAMINATION

The right of a defendant in a criminal trial to be confronted by the witnesses against him is guaranteed by the Sixth Amendment to the federal Constitution as well as section 686 subdivision 3 of the California Penal Code. (*People* v. *Johnson*, 68 Cal.2d 646, 653 [68 Cal.Rptr. 599, 441 P.2d 111].) The waiver of that right must be expressed and will not be implied from a mere failure to assert it. (*Brookhart* v. *Janis*, 384 U.S. 1 [16 LEd.2d 314, 86 S.Ct. 1245].)

The provisions of the Sixth Amendment to the federal Constitution in terms protect only persons charged with a crime and have been held to apply only to criminal proceedings. The presence in the amendment of that provision has, however, colored judicial thinking as to noncriminal proceedings. (See *Greene* v. *McElroy*, 360 U.S. 474, 497 [3 L.Ed.2d 1377, 1381, 79 S.Ct. 1400, 1414].)

■ A person's right of cross-examination and confrontation of witnesses against him in noncriminal proceedings is a part of procedural due process guaranteed by the Fifth Amendment and the Fourteenth Amendment to the federal Constitution, where there is involved a threat to life, liberty or property. "[T]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment." (*Greene* v. *McElroy*, 360 U.S. 474, 492 [3 L.Ed.2d 1377, 1388, 79 S.Ct. 1400, 1411].)

■ Such procedural due process is lacking when a person is refused a license that is necessary to the practice of a profession or other occupation because of charges made against him *ex parte*, and when he seeks and is denied the opportunity of confronting the persons making the charges and of presenting evidence to refute such charges. (*Willner* v. *Committee on Character & Fitness*, 373 U.S. 96, 101 [10 L.Ed. 2d 224, 228, 83 S.Ct. 1175, 1179].)

■ The deprivation of one's employment as the result of charges made through governmental channels requires not only that the person against whom the charges are made be

afforded a hearing to present evidence to counter the charges, but the opportunity to know all the evidence or information that is being considered against him. The United States Supreme Court declared in *Greene* v. *McElroy, supra,* 360 U.S. 474, 496 [3 L.Ed.2d 1377, 1390, 79 S.Ct. 1400, 1413] : "Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue."

In *Greene* v. *McElroy, supra,* although there were two different hearings before different hearing boards, the following matters were noted by the court: "The Government presented no witnesses. It was obvious, however, from the questions posed to petitioner and to his witnesses, that the Board relied on confidential reports which were never made available to petitioner. (p. 479 [3 L.Ed.2d at p. 1382 p. 1405].)

" . . . . . . . . . . .

"The hearing began with a statement by the Chairman, which included the following passage:

" 'The transcript to be made of this hearing will not include all material in the file of the case, in that, it will not include reports of investigation conducted by the Federal Bureau of Investigation or other investigative agencies which are confidential. Neither will it contain information concerning the identity of confidential informants or information which will reveal the source of confidential evidence. The transcript will contain only the Statement of Reasons, your answer thereto and the testimony actually taken at this hearing.' " (pp. 485-486 [3 L.Ed.2d at pp. 1384-1385, p. 1408].)

" . . . . . . . . . .

"During the course of the examination, the Board injected new subjects of inquiry and made it evident that it was relying on various investigatory reports and statements of confidential informants which were not made available to petitioner." (P. 487 [3 L.Ed.2d at p. 1386, p. 1409].)[2]

_____

[2] In fact, *Greene* v. *McElroy,* 360 U.S. 474, 508 [3 L.Ed.2d 1377, 1397, 79 S.Ct. 1400, 1419-1420], was decided on the narrow ground that: " . . . in the absence of explicit authorization from either the President or Congress the respondents were not empowered to deprive petitioner of his job in a proceeding in which he was not afforded the safeguards of confrontation and cross-examination."

## Do the Summary Features of Section 13353, Vehicle Code, Meet the Requirements of Due Process?

Section 13353 provides for a hearing at the request of the licensee, which may at his option be either formal or informal.

But if no hearing is requested, there results a summary suspension of the driving privilege based upon the contents of the arresting officer's sworn statement.

Where there is no dispute as to the facts upon which the governmental action is based, if the undisputed facts have been presented in the manner provided by law to the agency authorized to take action thereon and the facts presented are sufficient under the law to justify the action taken, the question of due process is limited to the constitutionality of the legislation under which the action has been taken.

The demands of due process are met where the statute provides for a subsequent hearing or review, even though in a particular case no such hearing or review is asked for. Thus, the summary suspension of a license by DMV for failure of a licensee to provide evidence of responsibility and to deposit security following an accident has been upheld where the suspension was made mandatory and there was opportunity for judicial review. (*Escobedo* v. *State of California,* 35 Cal.2d 870 [222 P.2d 1].)

### What Character of Evidence Is Required at an Informal Hearing?

Since the Legislature may constitutionally provide for the summary suspension of an operator's license, in the event no hearing is requested, either formal or informal, and since the proceeding for summary suspension based upon the sworn statement of the arresting officer meets the test of due process, it is reasonable that that sworn statement should be considered to have the dignity of *prima facie* evidence in an informal hearing when received without objection and without a request to cross-examine the officer.[3]

---

[3]The statement in the statutory report that the arresting officer "had reasonable cause to believe such person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor" is not the statement of an evidentiary fact and embodies a legal conclusion.

It may stand in the absence of objection to its reception into evidence. (*Vartanian* v. *Croll,* 117 Cal.App.2d 639, 648 [256 P.2d 1022].)

While the statement that the licensee refused to take a test may also be a conclusion, it should also be sufficient in the absence of objection or where there is no conflict as to that issue.

The "Arrest Report" and the "Supplemental Arrest Report" do not have a statutory basis for inclusion in the records of DMV. The use

In *Beamon* v. *Department of Motor Vehicles, supra,* 180 Cal.App.2d 200, DMV's records of numerous violations of the Vehicle Code were considered as evidence; it does not appear that they consisted of certified copies of judgments of conviction; indeed, under the Vehicle Code, it is possible that some of the "convictions" were in fact the statutory consequences of bail forfeiture.

In *Hough* v. *McCarthy, supra,* 54 Cal.2d 273, there were considered not only the certified abstract of a judgment of conviction of driving while under the influence of intoxicating liquor, but DMV's records of other offenses.

We conclude that the taking of oral testimony has not been made a prerequisite to the validity of an informal hearing before DMV in the absence of objection made at the time to the admission of hearsay.

### RELATION OF CROSS-EXAMINATION TO THE RULE AGAINST HEARSAY

Professor Wigmore lends his considerable authority to the proposition that: ". . . the Hearsay rule, as accepted in our law, signifies *a rule rejecting assertions, offered testimonially, which have not been in some way subjected to the test of Cross-examination.*" He goes on to say: "In the preceding passages, the testing required by the Hearsay rule is spoken of as cross-examination *under oath.* But it is clear beyond doubt that the oath, as thus referred to, is merely an incidental feature customarily accompanying cross-examination, and that cross-examination is the essential and real test required by the rule.

". . . [W]henever an exception to the Hearsay rule (*post,* § 1422) is found established, *i.e.,* whenever statements not subjected to cross-examination are exceptionally received, it is not required that they shall have been made under oath." (5 Wigmore on Evidence, § 1362, pp. 3 and 7.) The Wigmore statement has been quoted with approval in *Buchanan* v. *Nye,* 128 Cal.App.2d 582, 585 [275 P.2d 767].

We are not now dealing with the right of a defendant in a criminal trial. While the deprivation of the right to operate a motor vehicle on the public highways may entail severe economic loss, such loss is no greater than that suffered by many litigants as the result of civil trials before the courts. As to

---

of their contents in evidence as to a controverted matter of fact would be an abuse of the agency's discretion.

such trials, the rule is that hearsay must be objected to at the trial. (*Buchanan* v. *Nye, supra*, 128 Cal.App.2d 582, 586; *Powers* v. *Board of Public Works*, 216 Cal. 546, 552 [15 P.2d 156].) ·

In an administrative hearing, as in a trial by a court, the receipt into evidence of relevant hearsay without objection is not *ipso facto* error; and the failure to make objection is deemed a waiver of the objection. (*Bohn* v. *Watson*, 130 Cal. App.2d 24, 36-37 [278 P.2d 454].)[4] The failure, because unrepresented by counsel, of a person appearing at an administrative hearing to object to matters as to which a failure to object is generally deemed a waiver will nevertheless be deemed a waiver. (*Griswold* v. *Department of Alcoholic Beverage Control*, 141 Cal.App.2d 807, 810-811 [297 P.2d 762].)

However, in the absence of a statutory authorization, it has been held to be error to admit hearsay over objection in administrative hearings. (See *Yates* v. *Mulrooney*, 245 App. Div. 146 [281 N.Y.S. 216]; *Application of Kafka*, 272 App. Div. 364, [71 N.Y.S.2d 179, 183].)

## WAS THERE A CONTESTED ISSUE OF FACT IN THE PRESENT CASE?

The scope of the issues to be determined at a hearing under section 13353, Vehicle Code, are defined therein.

They are: (1) whether the police officer had reasonable cause to believe licensee had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor; (2) whether licensee was placed under arrest; (3) whether licensee refused to submit to the test after being requested by a peace officer to do so; and (4) whether he had been told that his driving privilege would be suspended if he refused to submit to the test.

That there was no dispute as to the existence of the facts upon which DMV is authorized to suspend a license under section 13353, Vehicle Code, is evident from the following:

At the hearing under scrutiny, licensee in fact did not deny that he was under the influence of intoxicating liquor when arrested, or that there was reasonable cause to believe he had been driving a vehicle on a public highway while under such influence; he made no attempt to deny that he had been

[4]True also in a criminal trial as to hearsay coming from the lips of a witness actually present. (*People* v. *Sanson*, 156 Cal.App.2d 250, 254 [319 P.2d 422].)

placed under arrest. His sole factual contention before the hearing officer and in the trial court was that he was so drunk he could not remember whether the officer had informed him of his right to choose between three kinds of tests and that if he refused to take some one of them his driving privilege would be suspended for six months, or to remember if he had refused to take a test.

The allegations quoted from licensee's petition for writ of mandate show there was no contest as to the facts that he operated a motor vehicle on a public highway while under the influence of intoxicating liquor, and that he gave evidence of those facts at the informal hearing. Neither in that hearing nor in the hearing on the petition in the court below did he produce testimony that the arresting officer did not advise licensee that his driving privilege would be suspended for six months if he refused to take one of the three types of tests specified, or that licensee refused to take a test.

The record of the informal hearing recites that licensee at that hearing gave the following statements:

"1. He had no reason to refuse a chemical test of his blood. He does not recall his refusal and if he did so, it was because of his state of inebriation.

"2. The loss of his driving privilege would definitely mean the loss of his job.

"3. He did not have adequate knowledge of the law and was unaware that his (unintentional) refusal of chemical tests would result in a mandatory suspension of his driving privilege."

The language of section 13353, Vehicle Code, is mandatory that the person arrested shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle upon the public highways for a period of six months.

It was to be presumed that the arresting officer performed his official duty in that respect. (Evid. Code, § 664; *People* v. *Serrano,* 123 Cal.App. 339, 341 [11 P.2d 81]; *Whaley* v. *Jensen,* 208 Cal.App.2d 222, 230 [25 Cal.Rptr. 184].)[5]

At the superior court hearing, licensee and a witness who had been a passenger in licensee's car at the time of the incident that led to the arrest testified. Pieced together from

---

[5]The presumption does not apply as to the officer's having probable cause to make an arrest.

their testimony, licensee drove past a stop sign into an intersection of a through highway without stopping and collided with a car being driven on the through highway. Licensee was drunk, and did not remember if he was asked to take a test or if he refused to take a test.

Licensee at the trial was asked and answered a question as follows:

"Were you aware there was a statute providing that refusal to submit to a test would constitute a basis to take away your license?

"A Yes, I knew this."

The passenger was asked and answered questions as follows:

"Q What did he speak like, if he were speaking?

"A Well, if he said anything you couldn't hardly make out what it was, it was so slurred, and loused up.

". . . . . . . . . . . . . . .

"Q Did you hear him say that he did not want—that he refused to take the test?

"A I didn't hear him say that, no. All I heard, the officer told him something to the effect, 'Would you take a test?', and he mumbled, and the officer wrote down something."

The trial court found that licensee refused to take a chemical blood test, a finding inconsistent with a claim that licensee was so far insensible from drunkenness that he was incapable of refusing consent.

The informal hearing held by DMV was not held and was not required to be conducted in accordance with Government Code, section 11513 subdivision (b). ▉ We believe, however, that what is true as to a hearing governed by that code is equally true of the informal hearing, i.e., the evidence produced by the administrative agency, if itself insufficient, may be supplemented by the testimony of a licensee given on his own behalf. (*O'Mara* v. *State Board of Pharmacy*, 246 Cal. App.2d 8, 11 [54 Cal.Rptr. 862].)

## The Claim of Failure of Memory Does Not Create a Conflict

▉ We believe that the New York court in *Donlick* v. *Hults*, 13 App.Div.2d 879 [215 N.Y.S.2d 427], correctly held that a claim of failure of memory as to whether there had been a refusal to take a test does not constitute evidence that there was no refusal.

## The Claim That Intoxication Rendered Licensee Incapable of Intelligently Refusing to Submit to the Test Does Not Avert the Consequences of the Refusal

The statute declares under what circumstances a consent will be implied; insensibility from any cause is one of those circumstances. Licensee's subsequent lack of recollection is not inconsistent with his having been aware at the time of what the officer said to him and what he said to the officer. The trial court's finding that licensee refused to take a test, and the arresting officer's report to that effect, find support in the fact that licensee was not taken to a hospital but to jail and that he remembered having had his fingerprints taken there.

## The Effect of the Criminal Prosecution Upon the Departmental Action

The course to be followed by DMV under section 13353, Vehicle Code, is not related to the commencement of any criminal action against licensee or to the result of such action if any be commenced. We note that under the Vermont statute the procedures looking to a revocation of a license have their inception in the entry of a plea of "not guilty" in a criminal charge. (See *State* v. *Muzzy*, 124 Vt. 222 [202 A.2d 267].)

The rule with regard to such proceedings for suspension or revocation of a license for refusal to submit to a chemical blood test is that such proceedings are civil in nature and are unaffected by the fact of the commencement of a criminal prosecution for driving under the influence of intoxicating liquor or by the result of such prosecution. (*Beare* v. *Smith*, 82 S.D. 20 [140 N.W.2d 603, 606]; *Prucha* v. *Department of Motor Vehicles*, 172 Neb. 415 [110 N.W.2d 75, 88 A.L.R.2d 1055].)

Licensee in the instant case testified he had told the hearing officer he had pleaded guilty to driving under the influence of intoxicating liquor and that the judge who received that plea had recommended against suspension of licensee's privileges in his employment. Such a result of the guilty plea in no way secures licensee from the mandatory effects of section 13353, Vehicle Code, and, under the holding in *Hough* v. *McCarthy*, *supra*, 54 Cal.2d 273, would not prevent DMV action to suspend the license because of that conviction.

The fortuitous circumstance that licensee pleaded guilty to a charge of driving while under the influence of intoxicating

liquor in no way discharges the duty of DMV to proceed under the statute; it must be considered as irrelevant. So, too, is the argument that the purpose of the statute has been served, since it was obviously intended to permit the obtaining of evidence to be used in the prosecution of one charged with driving while under the influence of intoxicating liquor. The evidence so obtained, however, might be of such character as to indicate licensee's innocence of such a charge and to make unnecessary the filing of a complaint.

In concluding that the writ of mandate should not have issued, we quote from *Keck* v. *Superior Court*, 109 Cal.App. 251, 253-254 [293 P. 128], where respondent court was upheld in sustaining a demurrer without leave to amend to a complaint that asked a review of a decision of DMV suspending a driver's license after a hearing. The evidence at the hearing was made a part of licensee's petition for review. The court on appeal detailed certain of the evidence, saying:

''From the foregoing it cannot be seriously contended that it was unreasonable to conclude that petitioner's conduct was so careless, negligent and reckless as to warrant the action taken. Indeed, to have done otherwise would have been a clear and inexcusable omission to perform an official duty, wisely imposed in the plain interest of public safety.''

Judgment reversed.

Brown (Gerald), P. J., and Coughlin, J., concurred.