[No. A032439. First Dist., Div. Three. Oct. 29, 1986.]

THERESA LEE FAHLGREN, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Mary Michel and Lawrence J. Gumbiner, Deputy Attorneys General, for Defendant and Appellant.

Stephen W. Reimer for Plaintiff and Respondent.

**OPINION**

**WHITE, P. J.**—Appellant California Department of Motor Vehicles appeals an order granting a writ of mandate which was filed on August 12, 1985. The writ precluded appellant from suspending respondent Theresa Lee Fahlgren's driver's license for driving without properly establishing financial responsibility pursuant to California Vehicle Code section 16070. We reverse.

## I

On April 21, 1984, respondent was involved in an automobile accident with Ms. Dorothea Wilson. As required by California Vehicle Code section 16000 et seq.[1] (the financial responsibility law), both parties filed "SR-1" forms ("Report of Traffic Accident" forms) with appellant in Sacramento. Ms. Wilson's SR-1 indicated estimated damage to her vehicle to be $1,000; respondent's form indicated an unknown amount of damage to her automobile but did allege physical injury to her person "[p]rimarily [in the] neck & shoulder." While Wilson claimed her vehicle was insured at the time of the accident, respondent offered no evidence or indication of any "financial responsibility."

Acting under authority of section 16070,[2] appellant on August 9, 1984, issued to respondent its "Order of [License] Suspension" to be in effect for one year. Subsequently, respondent properly requested an administrative hearing on the matter, which was held on December 13, 1984, in order to give respondent an opportunity to "show why the suspension provisions of the law [did] not apply to [her]." At the hearing, appellant introduced as evidence the signed SR-1 reports of both parties, and three supporting auto repair invoices and a statement by Ms. Wilson regarding the damages to her vehicle. Respondent offered no evidence but did object to the evidence offered by appellant. The hearing resulted in the sustaining of respondent's license suspension based on the evidence which established (1) property damage to Wilson's automobile in excess of $500, (2) bodily injury to respondent, and (3) that respondent failed to establish financial responsibility at the time of the accident.

On March 8, 1985, respondent filed a petition for writ of mandate in Superior Court of Contra Costa County. The writ was granted and filed on August 12, 1985, on the basis that respondent's own SR-1 form was im-

---

[1] Unless otherwise indicated, all code sections herein refer to the California Vehicle Code.

[2] Section 16070, in relevant part, provides that "(a) Whenever a driver involved in an accident described in Section 16000 fails to prove the existence of financial responsibility . . . at the time of the accident," that driver's license shall be suspended.

Other relevant Vehicle Code sections include:

(1) Section 16000 which describes accidents resulting in "damage to the property of any one person in excess of five hundred dollars ($500) or in bodily injury or in the death of any person shall within 10 days after the accident, report the accident on a form approved by the department . . . ."

(2) Section 16020 states that, "Every driver of, and owner of, a motor vehicle shall, at all times maintain in force one of the forms of financial responsibility specified in Section 16021."

(3) Section 16021, in relevant part, considers financial responsibility established if a driver or owner is (a) self-insured; (b) insured under a form of insurance or bond complying with state requirements; (c) the federal, state, or municipal government or an agent thereof.

properly admitted into evidence at the hearing against her and, without it, the remaining evidence was insufficient to uphold a suspension.[3]

The present appeal was timely filed on August 21, 1985.

II

The sole issue before this court is whether "a person's own accident report filed pursuant to . . . [s]ection 16000 can be used . . . to establish a prima facie case justifying the suspension of that driver's license under the financial responsibility law." Respondent concedes that "if [r]espondent's SR-1 form [was properly admitted and relied on at the hearing], then [a]ppellant has established a prima facie case, and [the] administrative decision should be upheld."

The use of one's own SR-1 report as the basis of his/her license suspension is a specific issue previously not addressed. We do, however, have sufficient similar case law upon which we may analyze the instant case. Resolving the present issue requires one to first examine the very purpose of the subject Financial Responsibility Law.

The state Supreme Court interpreted "[t]he California financial responsibility law (Veh. Code, § 16000 et seq.) [as requiring] drivers of motor vehicles to be self-insured, to have insurance, or to be otherwise financially responsible for damages caused by accidents." (*Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532, 535 [189 Cal.Rptr. 512, 658 P.2d 1313].) In a licensee's suspension hearing, it is the Department of Motor Vehicles' (D.M.V.) burden to prove the facts necessary in making a prima facie case for suspension; such burden can be fulfilled only by use of "competent evidence." (*Id.*, at p. 536.) In *Daniels*, the court found that "competent evidence" *does not* include the SR-1 report of the other party

---

[3]The superior court's "Notice of Decision," in part, reads: "This Court agrees that using one's own compliance with the reporting requirement as evidence of supporting a suspension is a violation of CVC 16000 et seq. and the privilege against self-incrimination. This is because a different result would make a law violator better off than the law complier. The other exhibits should not have been received absent a foundation for competency of the person making the estimate or testimony that repairs were made and paid for. Therefore, there is no evidence of damage before DMV. [¶] Although both counsel apparently agree that the [appellant's] own damages are sufficient to trigger the suspension, it would appear that CVC 16020 and 16050 et seq. are designed for the protection of the other vehicles and occupants and one's own damages alone should not trigger a suspension."

involved. Because the other party's report is "hearsay,"[4] it "does not in itself reflect the competency, reliability, and trustworthiness necessary to permit use of the report as the sole basis for a finding supporting a license suspension." (*Id.*, at at p. 541.)

Although not fully dispositive of our case, *Daniels* is marginally applicable. The difference is that *Daniels* dealt with a "hearsay" SR-1 report, here we deal with the licensee's *own* signed and sworn statement (SR-1). We do find some support in *Daniels* for the state's use of a licensee's own SR-1 against that party. In discussing the necessary competency, reliability and trustworthiness of the other party's SR-1, the court noted (*Daniels, supra,* 33 Cal.3d 532, fn. 5 at p. 539) that Evidence Code section 1220 ("admission of a party") is an example of an *exception* to the hearsay rule which would be sufficiently reliable in building the D.M.V.'s prima facie case against a licensee. As the SR-1 form of respondent here can be viewed as an "admission," we feel it proper to consider *Daniels*'s footnote 5 as having some positive support for our position here.

Similar to the *Daniels* case, the parties' briefs here also include a discussion of Government Code section 11513, subdivision (c),[5] which is alleged to have some relevance regarding the use of hearsay evidence in administrative hearings. We find the discussion of section 11513 misplaced in this case as respondent's SR-1 form, is an exception to the hearsay rule.

Examination of the legislative intent behind the 1974 enactment of the financial responsibility law (Veh. Code, §§ 16000-16075) reveals its passage as an effort to deal with the increasing number of "financially irresponsible" drivers. The Legislature declared that drivers or owners of automobiles in the state shall be "'financially capable of providing monetary protection to those suffering injury to their person or property by reason of the ownership or use of such vehicles'" regardless of fault of the owners or drivers and "'*such capability shall be deemed as a concurrent responsibility of such motor vehicle ownership or operation.*'" The Legislature further stated that owners or operators of vehicles "shall evidence such financial capability by

---

[4]In *Daniels,* contrary to the D.M.V.'s contentions in that case, the court found such a report did not come under the "business records" exception (Evid. Code, § 1271) to the hearsay rule. (*Daniels, supra,* 33 Cal.3d at pp. 537-538.) Neither was such a report admissible by statutory prescription—although Vehicle Code section 14108 allows for the consideration of a department's "official records" at administrative hearings, Government Code section 11513 (applicable by Veh. Code, § 14112) allows hearsay evidence to be used only for "supplementing or explaining other evidence" but is insufficient "in itself to support a finding unless it would be admissible over objection in civil actions."

[5]Applicability of Government Code section 11513, subdivision (c) is discussed in *Daniels, supra,* 33 Cal.3d at page 538. For the pertinent substance of that code section, see footnote 4, *ante.*

the methods specified in this act." (*Anacker* v. *Sillas* (1976) 65 Cal.App.3d 416, 421-422 [135 Cal.Rptr. 537], citing Stats. 1974, ch. 1409, § 1; italics added.)

Regarding the reporting requirements, the *Anacker* court observed that while *every* automobile driver or owner shall be financially responsible (under § 16020[6]), only those drivers who are involved in an accident may have to prove compliance with that law. "In some sense a person may rightly complain that it is unfair for him to have to establish proof of financial responsibility while others, not involved in an accident, do not." (*Anacker, supra,* 65 Cal.App.3d at pp. 423-424.) Regardless of the reporting "disparity," the court saw its duty not to criticize the wisdom of a statute but only to determine its constitutionality. (*Id.,* at p. 424.) In *Anacker,* it was found that "the law is more fully served when proof of financial responsibility is required without respect to who has suffered the injury." (*Id.,* at p. 425.)

Turning to the case at bar, in light of all the foregoing, we cannot agree that a licensee's own SR-1 cannot be used in the prima facie case of his/her license suspension. From *Daniels,* we see that the licensee's own SR-1 has the trustworthiness, reliability and competency necessary to support a suspension finding. From the legislative intent behind the Financial Responsibility Law, we see as necessary the requirement of every driver's or owner's financial responsibility, such responsibility proven by the rational reporting method prescribed by the Legislature.

### III

The second major reason given by the court below for granting the writ is that the use of respondent's SR-1 form against her violated the privilege against self-incrimination.

Respondent asserts that section 16005 was included in the Financial Responsibility Law so that this law would not violate a person's privilege against self-incrimination. We will first discuss whether the use of one's own SR-1 form violates that person's privilege against self-incrimination, and then we will consider the specific effect of section 16005.

■ Initially, we note that one's privilege not to be a witness against herself expressly applies to criminal cases (see U.S. Const., Amend. V; Cal. *Const.,* art. I, § 13; Evid. Code, § 930). Regarding disclosure of

---

[6]See footnote 2, *ante,* for the text of section 16020.

incriminating evidence however, "the privilege not to disclose any incriminating matter may be asserted by any person either in a civil or criminal proceeding. [Citation.]" (*People* v. *Whelchel* (1967) 255 Cal.App.2d 455, 460 [63 Cal.Rptr. 258]; see also *Black* v. *State Bar* (1972) 7 Cal.3d 676, 684-688 [103 Cal.Rptr. 288, 499 P.2d 968] and cases cited therein.) "In the case of the privilege against self-incrimination, 'the availability of the privilege does not turn upon the type of proceeding in which its protection is invoked [i.e., civil or criminal], but upon the nature of the statement or admission and the exposure which it invites.'" (*Borror* v. *Department of Investment* (1971) 15 Cal.App.3d 531, 542 [92 Cal.Rptr. 525], citing *In re Gault* (1967) 387 U.S. 1, 49 [18 L.Ed.2d 527, 558, 87 S.Ct. 1428].) In short, "'[t]he privilege . . . protects *any disclosures* which the witness may reasonably apprehend *could be used in a criminal prosecution or which could lead to other evidence that might be so used.*'" (*In re Gault, supra,* at pp. 47-48 [18 L.Ed.2d at p. 557], citing *Murphy* v. *Waterfront Commission* (1964) 378 U.S. 52, 94 [12 L.Ed.2d 678, 704, 84 S.Ct. 1594] (conc. opn. of White, J.), italics added.)

■ Under the direction of the United States Supreme Court in *Gault,* the state court in *Borror* found that "in a proceeding to revoke or suspend a license or other administrative action of a disciplinary nature . . . [s]uch a proceeding does not bear a close identity to the aims and objectives of criminal law enforcement, but has for its objectives the protection of the public rather than to punish the offender." (*Borror, supra,* 15 Cal.App.3d at p. 543.) Although *Borror* dealt with an administrative suspension of a party's real estate salesman's license, we find great similarity to an administrative suspension of a driver's license. Accordingly (under the guidelines of *Gault*), we fail to see how the suspension of a driver's license under the Financial Responsibility Law could lead to the type of situation requiring the protection of the self-incrimination privilege. Through no stretch of the imagination, can we think of any way in which information regarding a driver's financial responsibility could lead to either a criminal prosecution or to other evidence that might be so used.

We find support for our position in *California* v. *Byers* (1970) 402 U.S. 424 [29 L.Ed.2d 9, 91 S.Ct. 1535], where a plurality found that California's Vehicle Code section 20002, subdivision (a)(1), was not violative of the right against self-incrimination. That code section, a "hit and run" statute, required "the driver of a motor vehicle involved in an accident to stop at the scene and give his name and address." (*Id.,* at p. 425 [29 L.Ed.2d at p. 16].) The plurality determined that contrary to criminal situations (which generally require the greatest protection for an accused), the statute in question was essentially regulatory; its purpose "to promote the satisfaction of civil liabilities arising from automobile accidents. . . ." (*Id.,* at p. 430

[29 L.Ed.2d at p. 18].) Contrary to those types of statutes which the court found self-incriminating, section 20002 was not directed at a "'highly selective group'" or one "'inherently suspect of criminal activities,'" but was instead "directed at the public at large." (*Id.*, at pp. 430-431 [29 L.Ed.2d at p. 19].) In sum, "disclosures with respect to automobile accidents simply do not entail the kind of substantial risk of self-incrimination involved in [criminal cases, and] the statutory purpose is noncriminal and self-reporting is indispensable to its fulfillment."[7](*Ibid.*)

In the present case, we find the SR-1 neatly fulfills the criteria and factors outlined and discussed in both the state and federal jurisdictions. License granting and suspension is a civil act carrying few, if any, criminal or criminal-type implications, it involves a subject which is fully within state regulatory power, and it affects the society at large rather than any single "selective group."

■ Section 16005 provides in subdivision (a) as follows: "All reports and supplemental reports required by this chapter including insurance information forms shall be without prejudice to the individual so reporting and shall be for the confidential use of the department and any other state department requiring such information, except that the department shall upon request disclose from the reports: . . . [¶] (4) Any suspension action taken by the department." Respondent asserts that this section prohibits the use of her SR-1 form as evidence in a suspension hearing.

■ It is a fundamental tenet of our law that in interpreting a statute a court must adopt the construction which effectuates the purpose that the Legislature has sought to promote in enacting the statute. (*Klarfeld* v. *Berg* (1981) 29 Cal.3d 893, 900 [176 Cal.Rptr. 539, 633 P.2d 204].) Accepting respondent's interpretation of this statute would have the practical result of severely limiting the effectiveness of carrying out the legislative purpose behind the Financial Responsibility Law. Reiterating, the Legislature has manifested its will in absolute terms: section 16020 requires every automobile owner or driver to be financially responsible and section 16070

---

[7]The *Byers* court noted (402 U.S. 424, fn. 6 at p. 434 [29 L.Ed.2d 9, at p. 21]) that it was "not called on to decide, but if the dictum of the *Sullivan* [(1927) 274 U.S. 259 (71 L.Ed. 1037, 47 S.Ct. 607, 51 A.L.R. 1020)] opinion were followed, the driver having stopped and identified himself, pursuant to the statute, could decline to make any further statement. [Citation.]" While that statement implies that under the "hit and run" statute involved there, any information *beyond the driver's name and address* may tend to be self-incriminating, one must keep in mind that the *Byers* factual situation involved possible criminal *prosecution*. While the present case involves submission of information beyond reportage of one's name and address, (i.e., financial responsibility) we still see, and respondent indicates, no criminal or criminal-type prosecution which might result from the use of the information in one's SR-1 form.

requires license suspension (when there is sufficient property damage or personal injury) of any driver involved who is not financially responsible.

██ Our acceptance of respondent's position would be a direct contradiction of the legislative attempt to "check" as many drivers as possible for financial responsibility. Not to allow use of a licensee's own SR-1 form against him or her would make the state's burden of proof virtually impossible since the other driver's SR-1 form (per *Daniels*) cannot be used for the prima facie case. Furthermore, the language of section 16005 does not support respondent's assertion as the section provides that the information in the SR-1 form "shall be for the confidential use of the department and any other state department requiring such information, . . ." This language would seem to indicate that the information in the SR-1 form can be used by the department without limitation as long as it is for a function properly performed by the department. There is no question that the suspension of drivers' licenses is a proper function of the department. Furthermore, subdivision (a)(4) of section 16005 provides that the department shall upon request disclose any suspension taken by the department. It would therefore appear that the department could properly use a person's own SR-1 form in a suspension hearing and that only if suspension of the license is found to be required, is any knowledge of the contents of the SR-1 to be disclosed to the public.

Although there are no cases precisely on point, the California Supreme Court in *State of California* ex. rel. *Dept. of Transportation* v. *Superior Court* (1985) 37 Cal.3d 847 [210 Cal.Rptr. 219, 693 P.2d 804], explained the intent behind the confidentiality provision of section 20012, which governs submission of accident reports and contains nearly identical language to section 16005. Section 20012 provides in part: "All required accident reports, and supplemental reports, shall be without prejudice to the individuals so reporting . . . ." The court found that the section is intended to protect the identity of the reporting party from indiscriminate disclosure, but certain entities and persons with proper need for the information may obtain the information. (*Id.*, at p. 853.) Therefore, the court concluded that section 20012 protects only a limited privacy interest. (*Id.*, at pp. 852-853.) By virtue of the confidentiality provision "'Officious intermeddlers, cappers, salespersons and others seeking to profit from accidents upon our highways are effectively barred from pursuing their goals.'" (*Id.*, at p. 855.)

Section 16005 is intended to serve the same purpose. The language "without prejudice to the individual" is designed to prevent wholesale disclosure to the public of a licensee's insurance and financial data. It was

never intended to prevent appellant from enforcing the very law the reports were designed to implement.

In response to the fear that use of one's SR-1 form against the licensee will discourage reporting, we need only adopt the United States Supreme Court's observation that "[a]n organized society imposes many burdens on its constituents . . . [including] the filing of tax returns for income . . . ." (*California* v. *Byers, supra,* 402 U.S. 424, 427 [29 L.Ed.2d 9, 17].

The judgment is reversed.

Scott, J., and Merrill, J., concurred.