[No. A035417. First Dist., Div. Two. Sept. 22, 1987.]

RICHARD SNELGROVE, Plaintiff and Appellant, v. DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

COUNSEL

Andrew H. Parnes and Nolan & Parnes for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Mary C. Michel and Victor D. Sonenberg, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**SMITH, J.**—We hold in this case that the sworn statement executed by an arresting officer in a drunk driving stop can supply sufficient proof, in a formal administrative hearing before the Department of Motor Vehicles (department or DMV), to suspend or revoke the arrestee's license under Vehicle Code section 13353, even though the officer does not personally testify and the arrestee offers contrary proof. (All further section references are to the Vehicle Code unless designated otherwise.)

### BACKGROUND

Richard Snelgrove was stopped by California Highway Patrol Officer Alex Silva in the early morning hours of March 20, 1985, for weaving along a stretch of Highway 101 in San Mateo County. The officer arrested

Snelgrove for suspected drunk driving and took him to the jail in Redwood City for booking.

The officer prepared and signed a sworn statement later that same day and submitted it to the DMV pursuant to section 13353. The statement gives the officer's reasons for suspecting drunk driving, documents the arrest, and indicates that Snelgrove was admonished and then asked three times to submit to a chemical sobriety test, but refused each time.[1]

Notified that the DMV intended to suspend his driving privileges, Snelgrove requested a formal hearing. (§§ 14100, 14107, 13353, subd. (b).) The DMV's evidence at the hearing consisted solely of the sworn statement, admitted by the referee as an "official record" of the department. (§ 14108.) The arresting officer had been expected to appear but left a note that morning stating, without explanation, that he would be unavailable. Counsel for Snelgrove objected to admitting the statement on grounds that the officer's absence deprived him of the chance to cross-examine.[2] The referee offered to postpone the hearing so that counsel might subpena the officer, but counsel

---

[1] Section 23157, our state's implied consent law, mandates that a person lawfully arrested for driving under the influence of alcohol must submit to one of three chemical sobriety tests—blood, breath or urine—upon proper admonishment and request by an officer.

Section 13353 provides in part: "(a) If any person refuses the officer's request to submit to, or fails to complete, a chemical test or tests pursuant to Section 23157, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23152 or 23153 and that the person had refused to submit to, or did not complete, the test or tests after being requested by the officer, the department shall (1) suspend the person's privilege to operate a motor vehicle for a period of six months, (2) revoke the person's privilege to operate a motor vehicle for a period of two years . . . or (3) revoke the person's privilege to operate a motor vehicle for a period of three years . . . . The officer's sworn statement shall be submitted on a form furnished or approved by the department. . . .

"(b) The department shall immediately notify the person in writing of the action taken and, upon the person's request in writing and within 15 days from the date of receipt of that request, shall grant the person an opportunity for a hearing in the same manner and under the same conditions as provided in Article 3 (commencing with Section 14100) of Chapter 3, except as otherwise provided in this section. For purposes of this section, the scope of the hearing shall cover the issue of whether the peace officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23152 or 23153, whether the person was placed under arrest, whether the person refused to submit to, or did not complete, the test or tests after being requested by a peace officer, and whether . . . the person had been told that his or her driving privilege would be suspended or revoked if he or she refused to submit to, or did not complete, the test or tests."

[2] Counsel said: "[F]or the record, we would object to that coming in at this point and we feel that under the recent Supreme Court decisions involving the right to have a driver['Js license and how necessary it is to be a part of our society today, that without the officer present Mr. Snelgrove is being denied due process and if the hearing should turn out adversely to him, certainly the ramifications are great and we have come here today prepared to cross-examine the officer and go through this statement with him and without him here, we're denied the opportunity for cross-examination."

declined, maintaining that it was the department's burden to produce the officer. The objection was overruled.

Snelgrove testified. He admitted that he was weaving (though due to fatigue), had had a beer (three hours earlier), and was arrested by the officer on suspicion of drunk driving. He also recalled being advised (at least in part) and aware of his obligation to submit to a choice of tests. He recalled being advised twice at the jail, once in a small conference room and once in a larger room, both times during booking procedures. He did not recall, but conceded it possible, that the tests were discussed earlier, before arriving at the jail.

Snelgrove's main dispute with the written statement was its indication that he refused to be tested. According to the statement, he was arrested at 2:50 a.m. (*1*:50 a.m. probably intended), and was admonished and refused the tests at 2:05, at 2:40 and again at 3:50 a.m. At one point, according to the statement, Snelgrove answered, "I don't feel that you have the right to ask me to take any tests."

Snelgrove denied ever saying that and insisted that he did offer to take a test about an hour after the arrest. He said he was seated in the small conference room pondering "a whole table full of paperwork" he had been told to sign, when Officer Silva first admonished him and asked him to select a test. Confused by the paperwork, Snelgrove instead asked the officer for a brief explanation of each of the papers. At that point, the officer led him into the larger room, forced him over a counter, twisted his arm behind his back and told him he had better start cooperating and sign all the paperwork. Snelgrove had the officer repeat the admonishment and said that he would take the urine test. However, the officer answered, "No, it's too late." Snelgrove asked what the problem was, but the officer just repeated that it was too late.

The referee found against Snelgrove, and the suspension was upheld. Snelgrove petitioned the superior court for administrative mandate (Code Civ. Proc., § 1094.5), and an alternative writ issued. No new evidence was presented, but the matter was argued at a show-cause hearing. The court exercised its independent judgment on the administrative record and found the suspension supported, noting in particular that Snelgrove's testimony was contradictory and showed, "frankly, a lack of credibility . . . ." The writ was ordered denied.

Snelgrove moved for reconsideration. Counsel argued, based on dictum in *Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532 [189 Cal.Rptr. 512, 658 P.2d 1313], and a discussion of that dictum in *Hughes* v.

*Alexis* (1985) 170 Cal.App.3d 800 [216 Cal.Rptr. 550], that the officer's sworn statement was insufficient alone to support the suspension. The motion was denied after a hearing.

This is Snelgrove's appeal from the ensuing judgment denying a peremptory writ.

## APPEAL

■ The question is whether an officer's sworn statement under section 13353 can furnish sufficient evidence to support suspension at a formal hearing where the officer does not appear, the licensee offers contrary testimony and admission of the statement is objected to based on lack of the officer's appearance. Subsumed within the question are issues of hearsay and due process. Although there is ample case authority that such evidence *is* sufficient, that authority has subsequently been clouded by the Supreme Court in *Daniels* v. *Department of Motor Vehicles, supra,* 33 Cal.3d 532 (*Daniels*), and no published opinion has reexamined the matter since *Daniels*. We do so now and hold that the sworn statement alone can, and in this case does, support suspension.

We start by noting an evidentiary distinction between formal and informal DMV hearings. (§§ 14104, 14107.) In either type of hearing, the department "shall consider its official records" (§§ 14108, 14104), and a sworn statement filed with the department under section 13353 is an "official record" for that purpose. (*Fankhauser* v. *Orr* (1968) 268 Cal.App.2d 418, 422-423 [74 Cal.Rptr. 61].) However, formal hearings, as opposed to informal hearings, are further subject to the Administrative Procedure Act (APA) (see Gov. Code, § 11370), which provides that "[h]earsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." (*Id.,* § 11513, subd. (c); § 14112; *Daniels, supra,* 33 Cal.3d 532, 538; *Hough* v. *McCarthy* (1960) 54 Cal.2d 273, 287 [5 Cal.Rptr. 668, 353 P.2d 276].) An officer's sworn statement, of course, is hearsay if offered to prove the truth of matters it contains. (Evid. Code, § 1200.)

The earliest cases to address the sufficiency of a sworn statement are *August* v. *Department of Motor Vehicles* (1968) 264 Cal.App.2d 52 [70 Cal.Rptr. 172] (*August*) and *Fallis* v. *Dept. of Motor Vehicles* (1968) 264 Cal.App.2d 373 [70 Cal.Rptr. 595] (*Fallis*). Both involved informal hearings where licensees testified but did not object to the statement's admission or request an opportunity to cross-examine the officer. The court in *August* ultimately found no conflict between the sworn statement and the licensee's

testimony. (264 Cal.App.2d at pp. 62, 64-66.) It further held that the sworn statement was prima facie evidence under the circumstances—i.e., an informal hearing and lack of an objection or a request to cross-examine. (*Id.,* at p. 62.)

The court in *Fallis* similarly held that "in an informal hearing the statement should be and is sufficient *prima facie* evidence of any matter as to which there is no conflicting evidence." (264 Cal.App.2d 373, 379.) The court, however, found that a bare legal conclusion in the statement as to reasonable cause for the arrest was not sufficient evidence, alone, to overcome contrary testimony in that case. (*Ibid.*)

Soon afterward came *Fankhauser v. Orr, supra,* 268 Cal.App.2d 418 (*Fankhauser*), decided by a former panel of this court. The factual setting was again an informal hearing where the officer did not appear. However, the licensee objected to admission of the statement on hearsay grounds. Noting an observation in *August* that it is error to admit objected-to hearsay in administrative proceedings *in the absence of statutory authorization* (*id.,* at p. 422), *Fankhauser* found such authorization in the "official records" language of section 14108. The court held that the statement, having been duly filed with the department under section 13353, "was entitled to consideration at either an informal or formal hearing . . . ." (*Id.,* at p. 423.) Thus, "even though the officer's sworn statement did constitute hearsay, it was hearsay specifically made admissible by statute. [Citation.]" (*Ibid.*) The court noted that the provisions of the APA did not apply to informal hearings and found that the licensee's testimony did not actually controvert the officer's statement. (*Ibid.*)

Next came *Burkhart v. Department of Motor Vehicles* (1981) 124 Cal.App.3d 99 [177 Cal.Rptr. 175] (*Burkhart*), a case again involving an informal hearing without the officer present. The licensee had presented testimony and objected to admitting the statement. (*Id.,* at pp. 102-103.) The appellate court first reviewed implications in *August* and *Fallis,* that a sworn statement might be insufficient alone to establish a prima facie case as to any element of the DMV's proof contradicted by other evidence, and *Fankhauser's* holding that the statement was hearsay made admissible, in formal or informal hearings, as an official record under section 14108. (Pp. 104-106.) Then, noting that procedural due process protections apply to driver's license suspensions and revocations, the court painstakingly analyzed available authority "on the question of *what process is due*" (p. 107) and ultimately concluded that the statutory hearing scheme provided by section 14100 et seq. comports with due process under both the state and federal Constitutions (p. 112). Specifically, the court concluded that the

statutory scheme is constitutional "without the limitations imposed on it by *August . . .* and *Fallis*" (p. 111) and chose to follow *Fankhauser* (p. 112).

The DMV's suspension in *Burkhart* was therefore upheld even though the licensee's evidence may have conflicted with the sworn statement. (124 Cal.App.3d at p. 112.) The due process concern for cross-examination and confrontation was satisfied by the licensee's ability to subpena the officer himself if desired. *(Id.,* at p. 110.) However, the case was remanded for an opportunity to subpena the officer since his absence from the hearing had been unexpected and the licensee might not have anticipated the appellate court placing the burden of calling the officer on the licensee. (P. 113.)

Close on the heels of *Burkhart* came *Fisk* v. *Department of Motor Vehicles* (1981) 127 Cal.App.3d 72 [179 Cal.Rptr. 379, 31 A.L.R.4th 905] *(Fisk),* the first case involving a *formal* hearing, where APA hearsay restrictions (Gov. Code, § 11513, subd. (c)) apply. *Fisk* sidestepped the question of whether the Vehicle Code's "official records" provision (§ 14108) creates an independent, formal hearsay exception by holding that a sufficient foundation had been laid for the statement's admission as a record of a public employee, a traditional exception under Evidence Code section 1280. *(Fisk, supra,* at pp. 76-79 & fn. 3.) The officer in *Fisk* did appear at the hearing and testified about having prepared the statement, but he had no independent recollection of the incident. The statement thus constituted the department's sole proof, and the licensee did not present any evidence at all. *(Id.,* at pp. 75-76.) The statement, which detailed substantial evidence on each element of the DMV's proof, constituted sufficient competent evidence to warrant suspension and did not violate due process. *(Id.,* at p. 79-80.) The licensee's confrontation rights were held protected by the opportunity to cross-examine the appearing officer. *(Id.,* at p. 80.)

Next in the sequence is *Mackler* v. *Alexis* (1982) 130 Cal.App.3d 44 [181 Cal.Rptr. 613] *(Mackler),* in which two members of the court (2d. Dist., Div. 1) upheld a suspension where the officer failed to appear at a formal hearing, the sworn statement was admitted over hearsay and due process objections, and the licensee presented contrary testimony. The case is a synthesis of the prior decisions. Like the court in *Burkhart,* the *Mackler* majority rejected *August* and *Fallis* in favor of *Fankhauser's* conclusion that the sworn statement is admissible over a hearsay objection, in formal or informal hearings, as a DMV business record under section 14108 despite contrary evidence. *(Id.,* at pp. 51-55.) Alternatively, the majority adopted *Fisk's* rationale that the statement is admissible in any event as the record of a public employee under Evidence Code section 1280. *(Id.,* at pp. 55-56.) On the issue of due process, the majority embraced the conclusion in *Burkhart* that a licensee's right to call and cross-examine the officer on his own, and

to present impeaching testimony, is adequate protection. The case was remanded, however, for the same reasons present in *Burkhart*. (*Id.,* at p. 63.) The dissent in *Mackler* argued that section 14108 did not create a hearsay exception, Evidence Code section 1280 did not apply, and due process demanded the officer's presence. (*Id.,* at pp. 65-72, dis. opn. by Dalsimer, J.)

The Supreme Court's 1983 decision in *Daniels, supra,* 33 Cal.3d 532, questioned *Burkhart's* holding that section 14108 authorizes sole reliance on the officer's sworn statement. We noted that fact in *Hughes* v. *Alexis, supra,* 170 Cal.App.3d 800, at pages 808 to 810, a case involving a formal DMV hearing, but found that other evidence in the case corroborated the sworn statement on all elements of the DMV's proof (Gov. Code, § 13353, subd. (c) ([nonexcepted hearsay insufficient "in itself"]) and so did not have occasion to decide whether *sole* reliance on the statement would have supported suspension. We decide that question now.

The issue in *Daniels* was the sufficiency of another DMV "official record," the "SR 1 report" that a driver involved in a serious accident must fill out, sign and file with the DMV to comply with the California Financial Responsibility Law (§ 16000 et seq.). The driver's privileges were suspended for failing to file a report and proof of financial responsibility, and the DMV's only proof was the SR 1 report of a second driver involved in the accident. The report was admitted in evidence at a formal hearing over objections that it contained hearsay and had not been authenticated. (*Daniels, supra,* 33 Cal.3d 532, 534-535.)

The Supreme Court held that, when the licensee requests a hearing, use of the report alone is not authorized by statute and does not supply the prima facie showing needed for suspension. (*Daniels, supra,* 33 Cal.3d at pp. 536, 541.) The business records exception to the hearsay rule does not apply because the report, although made near the time of the accident under penalty of perjury and pursuant to a legal duty (Evid. Code, § 1271, subds. (b), (d)), is not made in the regular course of the author's (the driver's) business (subd. (a)), and the DMV, as custodian, cannot provide testimony on the report's identity or mode of preparation (subd. (c)).[3]

---

[3] Evidence Code section 1271 provides as follows:

"Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: (a) The writing was made in the regular course of a business;

"(b) The writing was made at or near the time of the act, condition, or event;

"(c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and

"(d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

Nor did section 14108 authorize sole reliance on the report. "[S]ection 14108, while allowing *consideration* of the official records of the D.M.V., does not provide authority for allowing the SR 1 to form the sole basis for a license suspension. [¶] The legislative mandate of Government Code section 11513 against sole reliance on hearsay evidence is emphatic; the language of section 14108 fails to express a clear legislative intent to supersede section 11513. Unlike statutes that clearly authorize exceptions to the hearsay rule, section 14108 does not reflect any factors providing the necessary competency, reliability, and trustworthiness that would transform the SR 1 report into legally sufficient evidence. That the report is made an 'official record' of the D.M.V. does not suffice to create a greater degree of competency, reliability or trustworthiness in the *preparation* of the report. . . ." (*Daniels, supra,* 33 Cal.3d at pp. 538-539, fns. omitted.) "The mere admissibility of evidence does not necessarily confer the status of 'sufficiency' to support a finding absent other competent evidence." (*Id.,* at p. 538, fn. 3.)

Of importance to our case is that *Daniels* rejected *Burkhart* as supporting sole sufficiency of the SR 1. Examining the facts and holdings of *Fankhauser* and *Burkhart,* and noting that those decisions rejected "contrary authority" in *August* and *Fallis* (*Daniels, supra,* 33 Cal.3d at p. 540), the court found *Burkhart* distinguishable: "Assuming, arguendo, the viability of the conclusion of *Burkhart* in the implied consent context, that case does not necessarily dispose of the question in this case. The result in *Burkhart* could be justified under the theory that the report filed by an officer under section 13353 would qualify under Evidence Code section 1271 as a business record or under Evidence Code section 1280 as an official record. Unlike the driver involved in an automobile accident, the statement under section 13353 is made by the officer in the regular course of his or her 'business.' In addition, the officer's report is a writing 'made by and within the scope of duty of a public employee,' and meets the other criteria of Evidence Code section 1280, and would thus qualify under that statutory exception to the hearsay rule as well. Whether these distinctions justify sole reliance on the officer's report in an implied consent hearing we need not now decide." (*Id.,* at p. 541; see *Fahlgren* v. *Department of Motor Vehicles* (1986) 186 Cal.App.3d 930, 934-936 [231 Cal.Rptr. 229] [holding that the suspended driver's *own* SR 1 is sufficient prima facie proof, not as a DMV official record, but as a party admission].)

*Daniels* compels us to hold that section 14108, which authorizes *consideration* of the department's official records, does not authorize sole reliance on the officer's sworn statement to support suspension under the implied consent law where the licensee has requested a hearing. *Burkhart's* contrary holding is irreconcilable with *Daniels.*

However, we further hold that the sworn statement in this case was admissible under the public employee records exception to the hearsay rule. To avoid confusing section 14108's "official records" provision with the hearsay exception of Evidence Code section 1280, often loosely referred to as the "official records" exception, we will call the latter provision the public employee records exception. It provides: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act condition, or event if:

"(a) The writing was made by and within the scope of duty of a public employee;

"(b) The writing was made at or near the time of the act, condition, or event; and

"(c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

*Daniels* notes that an officer's sworn statement under section 13353 "is a writing 'made by and within the scope of duty of a public employee,' and meets the other criteria of Evidence Code section 1280, and would thus qualify under that statutory exception to the hearsay rule . . . ." *(Daniels, supra,* 33 Cal.3d 532, 541.) *Fisk* and *Mackler,* both decided by the time of *Daniels* but not discussed in the high court's opinion, reached the same result.

Snelgrove maintains on the one hand that he does not dispute the statement's admissibility (as opposed to its sufficiency), yet he tries to distinguish *Fisk* on the basis that the officer in *Fisk* personally testified that he wrote the statement while events were fresh in his mind. This is an attack on the foundation laid for admitting the statement in this case, and we reject it for two reasons.

First, as a procedural matter, Snelgrove never objected on that ground at the hearing (see fn. 2, *ante,* p. 1367) or in the writ proceedings.

Second, the officer's testimony was not needed. The officer in *Fisk* did help establish the time and method of the statement's preparation. (Evid. Code, § 1280, subds. (b), (c); *Fisk, supra,* 127 Cal.App.3d 72, 76.) ██ However, Evidence Code section 1280, unlike the related business records exception of Evidence Code section 1271 (see fn. 3, *ante,* p. 1372), does not require testimony as to identity and mode of preparation in every case. A foundation can be established through judicial notice or sufficient independent evidence. *(In re Shannon C.* (1986) 179 Cal.App.3d

334, 343, fn. 10 [224 Cal.Rptr. 516], citing the Cal. Law Revision Com. com.; *People* v. *Flaxman* (1977) 74 Cal.App.3d Supp. 16, 21-22 [141 Cal.Rptr. 799]; see 1 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 5.1, pp. 245-249.) ■ Moreover, as *Fisk* notes, the statutory presumption of duty regularly performed (Evid. Code, § 664) shifts the foundational, method-of-preparation burden in this situation. The licensee therefore must show that the officer *failed in his duty* to observe and correctly report the events described. (*Fisk, supra,* 127 Cal.App.3d at pp. 77-78.) Also, as a practical matter, the DMV referee at an implied consent hearing is the actual custodian of the writing. *(Mackler, supra,* 130 Cal.App.3d 44, 57-58, fn. 4.)

Here, as in *Mackler,* the sworn statement qualified for admission *without* the officer's testimony. That the writing was made by a public employee within the scope of his duty and at or near the time of the event is self-evident. (Cf. *Mackler, supra,* 130 Cal.App.3d at p. 57, fn. 4.) Legal duty is established by section 13353, and the writing is signed and dated the day of the arrest. The writing is presumed to be truly dated (Evid. Code, § 640; *Robinson* v. *Puls* (1946) 28 Cal.2d 664, 668 [171 P.2d 430] [former Code Civ. Proc., § 1963, subd. (23)), and the officer's signature is presumed to be genuine (Evid. Code, § 1453, subd. (b)). The source of information— firsthand observations by the officer—indicates trustworthiness (*Fisk, supra,* 127 Cal.App.3d 72, 77), and the only hearsay items within the statement are Snelgrove's own admissions (Evid. Code, § 1220; *Fahlgren* v. *Department of Motor Vehicles, supra,* 186 Cal.App.3d 930, 934-936). As already noted, Snelgrove bore the burden of showing that the method of preparation was suspect.

■ ■ Snelgrove contends that the statement, even if containing admissible and hence competent evidence, was not *legally sufficient* evidence to support a license suspension. He does not deny that the statement contains "substantial evidence" to support the referee's decision as against his own testimony. Rather, he questions on due process grounds whether sole reliance on the statement can *ever* support license suspension at a contested hearing. The court in *Daniels,* he notes, declined to address whether admissibility under the public employee records exception would "justify sole reliance on the officer's report in an implied consent hearing . . . ." (*Daniels, supra,* 33 Cal.3d 532, 541.)

This issue was thoroughly considered and resolved in *Burkhart* and again in *Mackler*. The Supreme Court's reluctance to announce what would have been pure dictum in *Daniels* is no indictment of those analyses. The question may be an open one in the Supreme Court but not in the Court of Appeal. Snelgrove does not present any significant arguments to counter

*Burkhart* or *Mackler* on the due process issue. Court of Appeal precedent is unanimously against him. Contrary implications in the early cases of *August* and *Fallis (August, supra,* 264 Cal.App.2d 52, 62; *Fallis, supra,* 264 Cal.App.2d 373, 379-380) are just that—implications, not holdings. The actual holdings were limited to the situation where uncontradicted facts were presented at an informal hearing. Neither case cited due process authority or addressed facts such as those presented here, or in *Burkhart* and *Mackler.* Language used in an opinion must be understood in the light of the facts and issues then before the court, and an opinion is not authority for a proposition not considered. (*Valentine* v. *City of Oakland* (1983) 148 Cal.App.3d 139, 149 [196 Cal.Rptr. 59].)

 Snelgrove argues that *Burkhart* and *Mackler* must be reexamined because they "were decided when driving was viewed as a 'privilege,' not a fundamental right," and he cites the Supreme Court's intervening decision in *Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392 [188 Cal.Rptr 891, 657 P.2d 383]. His premise is flawed. Driving is viewed the same now as it was before *Berlinghieri.* It has always been respected by our courts as having great practical importance, although it has never been given the constitutional status of a "fundamental right" for due process or equal protection purposes. (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 74, 78-82 [177 Cal.Rptr. 566, 634 P.2d 917].) Driving has been, and remains, a "right" that is subject to substantive police power regulation consistent with procedural due process. *(Id.,* at pp. 80-82; *Perkey* v. *Department of Motor Vehicles* (1986) 42 Cal.3d 185, 189 [228 Cal.Rptr. 169, 721 P.2d 50].) In that sense, it remains a privilege as always. What *Berlinghieri* declared in 1983 was that the privilege, once acquired, is a "fundamental vested right" in the sense that suspension or revocation of the privilege demands "independent judgment" review by our courts in administrative mandate proceedings under Code of Civil Procedure section 1094.5. (*Berlinghieri, supra,* 33 Cal.3d 392, 398.) The court in that case specifically cautioned "against any blurring of [these] two separate and distinct senses in which the term 'fundamental' is used." *(Id.,* at p. 397.) Snelgrove blurs that distinction.

 We emphasize that the due process question raised in this and other cases is grounded not so much on what process is due, but on who has to pay for it. When the arresting officer fails to appear, the licensee who wants a chance to confront and cross-examine the officer has every right to obtain a postponement and subpena the witness, at his or her own expense. Due process concerns are thus satisfied. *(Hughes, supra,* 170 Cal.App.3d 800, 811.) Snelgrove was offered that opportunity in this case but declined it, insisting that the department had the obligation to produce the officer. He impliedly concedes that due process would have been satisfied had there

been a postponement and subpena at the *department's* expense, and he does not maintain that he was unable to bear the expense himself. In these circumstances, compelling the licensee to bear the expense of producing the officer does not offend due process.

Nor is there merit to his suggestion, made at oral argument, that the department must show "good reason" for the continuance—that is, show *why* the officer did not show up. The continuance is to preserve the licensee's constitutional rights. That is "good cause" enough.

Finally, the department represents (and Snelgrove does not dispute) that the department always seeks the arresting officer's attendance and that the officer does appear in the vast majority of cases. There is thus no indication on this record that the department is using *Burkhart* or *Mackler* as a way to get around having the officer testify.

### DISPOSITION

The judgment is affirmed.

Rouse, Acting P. J., and Benson, J., concurred.