[No. B068092. Second Dist., Div. Two. Feb. 16, 1993.]

STEPHEN KRUGER, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

COUNSEL

Susan A. Middleton for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Henry G. Ullerich, Assistant Attorney General, Martin H. Milas and Thomas Scheerer, Deputy Attorneys General, for Defendant and Respondent.

OPINION

GATES, J.—Stephen Kruger appeals from the judgments entered on May 11, 1992, after the trial court denied his petitions for a writ of administrative mandate directing the Department of Motor Vehicles to set aside the suspension of his driver's license (case No. NS001214) and a writ of mandate commanding the Department of Motor Vehicles to remove a notation from his driving record (case No. NS001482). Both actions arose out of the same event and were heard on the same day. Following entry of the judgments, the trial court ordered consolidation of the two cases, pursuant to the parties' stipulation. Appellant contends:

"I. The DMV waived its right to address the legal issues presented by Kruger. II. The pre-hearing suspension deprived Kruger of his due-process rights. III. The DMV improperly shifted its evidentiary burdens to Kruger. IV. The evidence at the administrative hearing was insufficient to find against Kruger on the charge of failure to file a report of traffic accident. V. The accident-report requirement violates Kruger's constitutional privilege

against self-incrimination. VI. The evidence at the administrative hearing was insufficient to find against Kruger on the charge of lack of coverage. VII. Post hearing procedures denied due process to Kruger. VIII. The DMV charges should be dismissed without leave to reinstitute them. IX. The DMV violated Kruger's rights under the Information Practices Act. X. Veh. Code § 1806 is unconstitutional on its face and as applied to Kruger. XI. It was unlawful for the DMV to record hearsay and legal conclusions on Kruger's driver records. XII. Statutory attorney's fees and costs should be awarded to Kruger."

Though we have concluded that each of these contentions is quite meritless, nonetheless we have elected to treat them seriatim in a published decision in the hope they will never be urged again at any level.

The evidence relating to appellant's driver's license suspension hearing was in all material respects uncontroverted. Respondent received a "Report of Traffic Accident" from Tarajar Inthapanti, stating he had been injured in a four-vehicle traffic accident on March 8, 1991. He identified appellant as the driver of one of the vehicles.

After receiving the report, respondent notified appellant on April 8, 1991, by means of a document entitled "Order of Suspension," that it had no record of his having filed an accident report or having provided evidence of liability coverage for the vehicle involved in the accident as required by sections 16004, subdivision (a) and 16070 of the Vehicle Code. Respondent cautioned appellant that failure to comply with these requirements would result in the suspension of his driving privilege effective April 23, 1991. Appellant was invited to call or return an enclosed form in the event he was insured, with the assurance that "[u]pon receipt of acceptable insurance information, the pending suspension will be cancelled." Finally, appellant was afforded an opportunity, in the event he was not insured, to challenge respondent's claim that he was "the driver or owner of a vehicle involved in an accident that resulted in damages over $500 and/or resulted in an injury or death."

Appellant provided no information on financial responsibility, but did demand a hearing "on matters allegedly within the scope of the Order of Suspension." When the hearing was held on May 17, 1991, Inthapanti was the only witness to testify. Inthapanti confirmed that he and appellant had been involved in a traffic accident on March 8 and that he, Inthapanti, had sought medical treatment for an injured foot and lower back pain. In addition, he testified that his automobile had sustained both front- and rear-end damage. He submitted two repair estimates indicating it would cost

between approximately $3,700 and $4,000 to fix his vehicle. Appellant presented no evidence.

Respondent notified appellant that his driving privilege was to be suspended effective June 17, 1991, based on its findings that appellant was "the driver or owner of a vehicle involved in an accident on 3/8/91 in or near Huntington Beach[;]" that "[t]he accident resulted in property damage over $500 or bodily injury or death[;]" and that appellant had failed to establish "that financial responsibility was in effect which covers the driver for the vehicle involved in the accident." Appellant demanded administrative review of the decision as provided for in the notice of findings and decision. Respondent reaffirmed its findings and decision on June 18, 1991, and apprised appellant that the stay of suspension had ended and that his driving privilege would cease as of June 22, 1991. Appellant thereafter sought relief in the superior court.

■ Appellant's first contention fails. We are aware of no rule of law which would compel this court or the superior court to resolve the various legal issues advanced by appellant in his favor solely because respondent had failed to address them adequately or at all. We agree with the trial court that we have a "duty to rule correctly [on legal questions] regardless of what response is given to us" and decline to apply abandonment or waiver principles to preclude respondent from replying to the points raised by appellant on appeal. *Estate of Silverstein* (1984) 159 Cal.App.3d 221 [205 Cal.Rptr. 294], cited by appellant, relates to the failure to object to inadmissible evidence and is therefore distinguishable.

■ Appellant asserts in his second contention that he was deprived of his driver's license before respondent had conducted a hearing to determine whether suspension was warranted. He then argues a "pre-taking hearing" is mandatory except in cases of emergency and sets out to prove there was no emergency here. The problem with appellant's analysis is that respondent has not sought to justify its action on the basis of an emergency. There was no reason to do so, since appellant did not lose the privilege to drive prior to his suspension hearing. His demand for a hearing operated to stay the suspension of his license until the hearing was completed and a decision had been made. (Veh. Code, § 16075, subd. (c).) Thus, he was afforded the very presuspension notice and opportunity to be heard that he argues is required to satisfy due process requirements.

Appellant next declares a hearing on the merits fails to satisfy due process standards if " '[i]t compels the owner to institute the action rather than the department,' " quoting from *Menefee & Son* v. *Department of Food and*

*Agriculture* (1988) 199 Cal.App.3d 774 [245 Cal.Rptr. 166]. The statutory scheme condemned in *Menefee* permitted the seizure and destruction of crops treated with unauthorized substances. It provided for no administrative hearing whatsoever, but required the owner of the seized crops to initiate some undefined type of judicial hearing. Obviously, it bears no similarity to the Vehicle Code provisions under review in the instant matter, which placed no such undue burden on appellant.

Appellant's third contention is unpersuasive. ■ "When an administrative agency initiates an action to suspend or revoke a license, the burden of proving the facts necessary to support the action rests with the agency making the allegation. Until the agency has met its burden of going forward with the evidence necessary to sustain a finding, the licensee has no duty to rebut the allegations or otherwise respond. [Citations.]" (*Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532, 536 [189 Cal.Rptr. 512, 658 P.2d 1313].) ■ Respondent scrupulously adhered to this standard in appellant's administrative hearing. The language from its various notices, relied upon by appellant as evidence to the contrary, appears to be merely an attempt to advise appellant that he would be given an opportunity to rebut or otherwise respond to respondent's proofs that the accident was of the reportable variety. Insofar as the question of financial responsibility is concerned, it was, in fact, appellant's duty as the driver of a vehicle involved in a reportable accident to demonstrate that his "preexisting obligation [to be financially responsible] ha[d] been satisfied. . . ." (*Anacker* v. *Sillas* (1976) 65 Cal.App.3d 416, 422 [135 Cal.Rptr. 537]; *Fahlgren* v. *Department of Motor Vehicles* (1986) 186 Cal.App.3d 930, 936 [231 Cal.Rptr. 229]; Veh. Code, § 16070, subd. (a).)

■ Contrary to appellant's fourth contention, the evidence that a reportable accident had taken place was overwhelming and uncontroverted. Appellant's attempts to challenge the credibility of Inthapanti or the weight to be accorded his testimony were matters to be decided by the trial court and its determination is binding on this court. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480]; *Adler* v. *Department of Motor Vehicles* (1991) 228 Cal.App.3d 252, 257 [279 Cal.Rptr. 28].)

Appellant also exhorts us to reverse the court's factual determination that he failed to file a traffic accident report. Though Vehicle Code section 16004 does call for the mandatory suspension of the driving privilege of a person who fails to report an accident of the variety described in Vehicle Code section 16000, respondent's decision in the instant case did not rest on that section. Rather, respondent based its suspension of appellant's license on his

failure to establish proof of financial responsiblity. (Veh. Code, § 16070.) In light of that, appellant's failure to file an accident report was not one of the findings listed in support of its decision.

■ Appellant's fifth contention is without merit. "License granting and suspension is a civil act carrying few, if any, criminal or criminal-type implications, it involves a subject which is fully within state regulatory power, and it affects the society at large rather than any single 'selective group.' " (*Fahlgren* v. *Department of Motor Vehicles, supra,* 186 Cal.App.3d at p. 938.) Thus, it has been determined that the requirement that a report be filed in the event of a reportable accident (Veh. Code, § 16000, subd. (a)) and the use of respondent's "Report of Traffic Accident" form against a licensee do not violate that person's privilege against self-incrimination. (186 Cal.App.3d at pp. 936-938.)

Appellant's sixth contention is based on a premise we previously refused to accept, that respondent had the burden of demonstrating appellant's lack of financial responsibility.

We are likewise unpersuaded by the challenges in appellant's seventh contention to the legal sufficiency of respondent's findings. Respondent made the findings required under the Vehicle Code section 16075, subdivision (b). It was obligated to do no more. We do not share appellant's doubt that meaningful administrative appellate review could have been conducted in a single day. The suspension hearing was brief and the factual and legal issues were uncomplicated.

Appellant's eighth contention is but a rehash of his sufficiency of the evidence claim which we already have rejected.

Appellant's next three contentions relate to his demand on June 27, 1991, for an administrative hearing on the issue of "[t]he sufficiency of the grounds for assigning report code 8 to the accident which occurred on March 8, 1991."[1] Respondent in its reply indirectly denied appellant's request by ignoring it. It explained the notation was required by section 1806 of the Vehicle Code which reads: "The department shall file all accident reports and abstracts of court records of convictions received under this code, and in connection therewith, shall maintain convenient records or make suitable notations in order than an individual record of each license showing the

---

[1] The coding on the printout prepared by respondent reflected that appellant had been determined to be the driver " 'most at fault' " by the officer who had submitted the accident report to respondent in accordance with Vehicle Code section 20008 et seq. ("Accidents and Accident Reports").

convictions of the licensee and all traffic accidents in which the individual was involved, except those where, in the opinion of a reporting officer, another individual was at fault, are readily ascertainable. At its discretion the department may file and maintain these accident reports and abstracts by electronic recording and storage media and after transcribing electronically all available data from the accident reports and abstracts of conviction may destroy the original documents. Notwithstanding any other provisions of law, the recorded facts from any electronic recording and storage device maintained by the department shall constitute evidence of the facts in any administrative actions instituted by the department."

■ We perceive no constitutional infirmity in Vehicle Code, section 1806, either on its face or as applied to appellant. The facts in *Wisconsin* v. *Constantineau* (1971) 400 U.S. 433 [27 L.Ed.2d 515, 91 S.Ct. 507], relied upon by appellant, are not analogous to those in the matter before us. *Constantineau* dealt with a law authorizing designated persons to forbid in writing "the sale or gift of intoxicating liquors to one who 'by excessive drinking' produces described conditions or exhibits specified traits, such as exposing himself or family 'to want' or becoming 'dangerous to the peace' of the community." (*Id.* at p. 434 [27 L.Ed.2d at p. 517], fn. omitted.) The Supreme Court noted that "where the State attaches 'a badge of infamy' to the citizen, due process comes into play. [Citation.] '[T]he right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.' [Citation.]" (*Id.* at p. 437 [27 L.Ed.2d at p. 519].)

No such "badge of infamy" attached to appellant as a result of the document at issue here. The evidence has shown it to be "an 'in-house' printout . . . releasable only to the record subject, Department [of Motor Vehicles] employees, law enforcement agencies and some government entities." It contrasts markedly with the " 'out-of-house' printout" which respondent releases to insurance companies and other private entities and individuals, subject to the limitations of Vehicle Code sections 1808, 1808.5 and 1808.21. The latter document discloses only that appellant was involved in an accident. It contains no " 'accident responsibility code.' "

The information maintained by respondent on its in-house printout is used in conjunction with its negligent operator program (Veh. Code, §§ 12810, 12810.5) and in its investigations. (Veh. Code, § 13800.) Both programs provide notice and present an opportunity for hearing before an individual's driving privilege is revoked or suspended. (Veh. Code, §§ 12810.5, 13950.) Under the circumstances, therefore, it does not appear appellant will face a

loss of any kind as a result of the report code on his record without first receiving notice and having a chance to be heard.

■ We perceive no violation of appellant's rights under the Information Practices Act of 1977. (Civ. Code, § 1798 et seq.) On the contrary, the precautions taken by respondent in its maintenance and handling of the in-house printouts are wholly consistent both with that act and respondent's statutory duty under Vehicle Code section 1806. Appellant's claim that respondent wrongfully prevented him from "inspect[ing] all the personal information in any record" held by it (Civ. Code, § 1798.34, subd. (a)) is not supported by the record before us.

The mere fact that respondent may be restricted in its use of or reliance on any hearsay or legal conclusions contained in appellant's driving records (*Carlton* v. *Department of Motor Vehicles* (1988) 203 Cal.App.3d 1428 [250 Cal.Rptr. 809]) does not support appellant's contention that it was unlawful for respondent even to record such information.

Having rejected each of the preceding 11 contentions, it is manifest that appellant's actions have not served to vindicate "an important right affecting the public interest" so as to justify an attorney fee award under the private attorney general doctrine. (Code Civ. Proc., § 1021.5.) It is likewise obvious he has no resort to Government Code section 800, which provides for an award of attorney fees where a party has successfully challenged arbitrary or capricious action or conduct by a public entity or officer.

The judgments are affirmed.

Boren, P. J., and Nott, J., concurred.